**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT GLEN JONES, JR., *Petitioner-Appellant*, <br><br> v. <br><br> CHARLES RYAN, *Respondent-Appellee*. | No. 13-16928 <br><br> D.C. No. 4:03-cv-00478-DCB |

| | |
|---|---|
| ROBERT GLEN JONES, JR., *Petitioner*, <br><br> v. <br><br> CHARLES RYAN, *Respondent*. | No. 13-73647 <br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Submitted October 10, 2013[*]
San Francisco, California

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed October 18, 2013

Before:  Ronald M. Gould, Richard C. Tallman,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[**]

**Habeas Corpus / Death Penalty**

The panel affirmed the district court's dismissal of a motion for relief from judgment under Fed. R. Civ. P. 60(b) and alternative denial on the merits, and denied an application to file a second or successive habeas petition.

This court previously affirmed the conviction and sentence, for murder and related crimes, on direct appeal and federal habeas corpus review.  After the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), petitioner filed a Rule 60(b) motion.  The panel held that petitioner could not use Rule 60(b) as a vehicle to assert new claims that should be brought in a 28 U.S.C. § 2254 habeas corpus petition, and affirmed the dismissal of the motion as an unauthorized second or successive petition.  The panel affirmed the district court's alternative denial of the Rule 60(b) motion on the merits.  The panel then construed the appeal as a request to file a second or successive petition and denied it.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jon M. Sands, Federal Public Defender for the District of Arizona; Timothy M. Gabrielsen, Assistant Federal Public Defender, Tucson, Arizona, for Petitioner-Appellant.

Thomas C. Horne, Attorney General of Arizona; Jeffrey A. Zick, Chief Counsel; Lacey Stover Gard, Assistant Attorney General; Jeffrey L. Sparks, Assistant Attorney General, Phoenix, Arizona, for Respondent-Appellee.

## OPINION

GOULD, Circuit Judge:

We confront issues concerning whether and how the United States Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), affects the standards for when a Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") motion may be filed, and for when a second or successive 28 U.S.C. § 2254 habeas corpus petition may be filed.

Arizona death row prisoner Robert Glen Jones, Jr., appeals from the district court's order dismissing his motion for relief from judgment filed under Rule 60(b). The district court concluded that Jones's Rule 60(b) motion sought to raise new claims such that it actually constituted a second or successive 28 U.S.C. § 2254 habeas corpus petition that the district court could not consider absent authorization from our court. *See Jones v. Ryan*, No. CV-03-00478, 2013 WL 5348294, at *1, *5 (D. Ariz. Sept. 24, 2013) ("Petitioner is attempting, under the guise of a Rule 60(b) motion, to gain a second opportunity to pursue federal habeas relief on new

grounds."); *see also* 28 U.S.C. § 2244(b)(3).   In No. 13-16928, we grant Jones a certificate of appealability ("COA"), permitting our review of this appeal, and affirm the judgment of the district court.   In No. 13-73647, we deny Jones's application to file a second or successive habeas corpus petition.

Because of the expedited nature of this appeal and its death penalty consequences, however, we also evaluate Jones's Rule 60(b) motion on the merits and deny him relief from judgment because he has not satisfied the standards permitting relief on those grounds.   We then construe Jones's appeal as a request for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court pursuant to 28 U.S.C. § 2244(b)(3)(A).   *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1609 (2012).[1]  Also, in footnote 5, we address Jones's application in No. 13-73647 for leave to file a second or successive petition for writ of habeas corpus.   Because we conclude that Jones has not met the requirements contained in 28 U.S.C. § 2244(b), for filing a second or successive habeas corpus petition, we deny his separate request.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

---

[1] While *United States v. Washington* addressed a 28 U.S.C. § 2255 habeas corpus petition, 28 U.S.C. § 2255 "was intended to mirror § 2254 in operative effect," *Reed v. Farley*, 512 U.S. 339, 353 (1994) (internal quotation marks omitted), so our analysis of those statutes is largely the same.

# I

Jones was convicted of six murders in Arizona state court and was sentenced to death in 1998. He was also convicted of first-degree attempted murder, aggravated assault, armed robbery, and first-degree burglary. Our opinion of August 16, 2012, affirming the district court's denial of Jones's first 28 U.S.C. § 2254 federal habeas corpus petition, details the circumstances of Jones's crimes and the evidence presented at his trial:

> In 1996, six people were killed during two armed robberies in Tucson, Arizona. On May 30, the Moon Smoke Shop was robbed, where two victims were killed and a third was wounded by gunfire. On June 13, the Fire Fighters Union Hall was robbed, and four persons there were killed.
>
> The Moon Smoke Shop robbery began when two robbers followed a customer, Chip O'Dell, into the store and at once shot him in the back of the head. Four employees were in the store: Noel Engles, Steve Vetter, and Mark Naiman were behind one counter concentrating on the stock, and Tom Hardman was behind another. After hearing the gunshot, Engles and Naiman looked up to see a robber in a long-sleeved shirt, dark sunglasses, and a dark cowboy hat wave a gun at them and yell to get down. Naiman recognized the gun as a 9mm. Engles dropped to his knees and pushed an alarm button.

Engles noticed a second robber move toward the back room and heard someone shout, "Get the f* * * out of there!" The gunman at the counter told Naiman to open the cash register. After Naiman did so, the gunman reached over the counter and began firing at the others on the floor. Thinking that the others were dead, Naiman ran out of the store and called 911 at a pay phone. On the floor behind the counter, Engles heard shots from the back room and then, realizing the gunmen had left the store, also ran out of the store, by the back door. Running up the alley to get help, Engles saw a light-colored pickup truck with two people in it accelerate and turn on a street into heavy traffic.

Naiman and Engles survived. Vetter also survived, although shot in the arm and face. O'Dell and Hardman were both killed by close range shots to the head, O'Dell at the entrance to the store and Hardman in the back room. Three 9mm shell casings were found in the store, one beside O'Dell and two near the cash register. Two .380 shells were found near Hardman's body. Two weeks after the robbery, Naiman met with a police sketch artist who used his description of the gunmen to create sketches of the suspects. These sketches were released to the media in an effort to catch the perpetrators. At trial, two acquaintances of Jones testified that when they saw the police sketches their first thought was that they looked like Jones.

The Fire Fighters Union Hall was robbed two weeks later. There were no survivors of the violence that befell those present there. Nathan Alicata discovered the robbery at 9:20 p.m. when he arrived at the Union Hall and discovered the bodies of Maribeth Munn (Alicata's girlfriend), Carol Lynn Noel (the bartender), and a couple, Judy and Arthur Bell. The police investigation turned up three 9mm shell casings, two live 9mm shells, and two .380 shell casings. About $1300 had been taken from the open cash register, but the robbers were unable to open the safe. The coroner, who examined the bodies at the scene, concluded that the bartender had been shot twice, and that the other three victims were shot through the head at close range as their heads lay on the bar. The bartender's body had a laceration on her mouth consistent with having been kicked in the face, and Arthur Bell's body had a contusion on the right side of his head showing he was struck with a blunt object, possibly a pistol.

In 1998, petitioner Robert Jones was convicted of these ghastly crimes of multiple murder and sentenced to death. His co-defendant, Scott Nordstrom, had been convicted in a separate proceeding six months earlier. Jones's theory of the case at trial and on appeal was that Scott Nordstrom and his brother David Nordstrom committed these murders, while he was not involved. While there was no physical evidence or positive

eyewitness identifications conclusively linking Jones to the crimes, both he and his truck matched descriptions given by survivors of the Moon Smoke Shop robbery. The prosecution's case against Jones was based in large part on David Nordstrom's testimony. David Nordstrom gave a detailed account of his role as a getaway driver in the Moon Smoke Shop robbery, and identified Jones as a robber and shooter, as well as the guns he carried. But that was not all of the testimony against Jones. Lana Irwin, an acquaintance of Jones, also testified that she overheard Jones talking about details of these murders that the police had not released to the general public. Jones's friend David Evans gave additional implicating testimony.

*Jones v. Ryan*, 691 F.3d 1093, 1096–97 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2831 (2013).[2]

Jones's convictions and sentence were upheld on direct review, and on state collateral review and federal habeas corpus review, culminating in our opinion in *Jones v. Ryan*, 691 F.3d 1093 (9th Cir. 2012). Jones filed a petition for a writ of certiorari at the United States Supreme Court, which declined review. *Jones v. Ryan*, 133 S. Ct. 2831 (2013). The Supreme Court decided *Martinez* on March 20, 2012, holding that, in some circumstances, the ineffective assistance of state

---

[2] More details of the crimes and the evidence presented at Jones's trial are set forth in our earlier opinion and in the Arizona Supreme Court's opinion upholding Jones's convictions and sentence. *See State v. Jones*, 4 P.3d 345, 352–55 (Ariz. 2000), *cert. denied*, 532 U.S. 978 (2001).

post-conviction relief counsel can serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim. 132 S. Ct. at 1315. Thereafter, on August 21, 2013, Jones filed a motion in the district court seeking relief from judgment pursuant to Rule 60(b)(6). Jones sought to assert three new ineffective-assistance-of-trial-counsel claims based on *Martinez*, and to assert a new claim for an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963), during habeas corpus proceedings.

The State of Arizona ("the State") moved to dismiss Jones's self-styled Rule 60(b) motion as an unauthorized second or successive 28 U.S.C. § 2254 habeas corpus petition. *See* 28 U.S.C. § 2244(b)(2). The district court agreed with the State that Jones could not use Rule 60(b) as a vehicle to assert new claims and dismissed Jones's appeal for lack of jurisdiction absent authorization from the Court of Appeals for the Ninth Circuit. *Jones*, 2013 WL 5348294, at \*1. The district court neither granted nor explicitly denied a COA. This appeal followed. Jones's execution has been set for October 23, 2013. As noted above, in No. 13-16928 we grant Jones a COA, which is necessary to permit our review of this appeal.[3]

---

[3] Were Jones appealing the denial or dismissal of a valid Rule 60(b) motion, he may have had no need for a COA. *See Harbison v. Bell*, 556 U.S. 180, 183 (2009) ("[28 U.S.C. §] 2253(c)(1)(A) . . . governs final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention."). Because we affirm the district court's ruling that Jones's purported Rule 60(b) motion was in fact an unauthorized second or successive 28 U.S.C. § 2254 habeas corpus petition, however, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, "governs the conditions of [Jones's] appeal, and so he was required to seek a COA to obtain appellate review of the dismissal of his habeas

## II

We review the district court's decision to dismiss Jones's Rule 60(b) motion as an unauthorized second or successive 28 U.S.C. § 2254 habeas corpus petition *de novo*. *See Henderson v. Lampert*, 396 F.3d 1049, 1052 (9th Cir. 2005); *Thompson v. Calderon*, 151 F.3d 918, 921 (9th Cir. 1998) (en banc).

Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rule 60(b)(6), the provision under which Jones brought his motion, permits reopening for "any . . . reason that justifies relief" other than the more specific reasons set out in Rule 60(b)(1)–(5). Fed. R. Civ. P. 60(b)(6); *see Gonzalez*, 545 U.S. at 528–29. A movant seeking relief under

---

petition." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). We treat Jones's notice of appeal, filed on September 24, 2013, as an application for a COA. *See* Fed. R. App. P. 22(b); *Slack*, 529 U.S. at 483.

When the district court denies a habeas corpus petition on procedural grounds and fails to reach the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Reviewing Jones's motion, we conclude that he has satisfied AEDPA's requirements for a COA by making "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and by showing that jurists of reason could debate whether the district court properly dismissed Jones's Rule 60(b) motion as a disguised (and unauthorized) second or successive 28 U.S.C. § 2254 habeas corpus petition. We grant Jones a COA, though this of course is not the same as authorizing him to file a second or successive 28 U.S.C. § 2254 habeas corpus petition based on the standard in 28 U.S.C. § 2244(b).

Rule 60(b)(6) must show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). Such circumstances "rarely occur in the habeas context." *Id.*

While the habeas restrictions established by AEDPA "did not expressly circumscribe the operation of Rule 60(b)," they "are made indirectly relevant . . . by the fact that Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings . . . only to the extent that [it is] not inconsistent with applicable federal statutory provisions and rules." *Id.* at 529 (alteration in original) (footnote omitted) (internal quotation marks omitted). Habeas corpus petitioners cannot "utilize a Rule 60(b) motion to make an end-run around the requirements of AEDPA" or to otherwise circumvent that statute's restrictions on second or successive habeas corpus petitions. *Calderon v. Thompson*, 523 U.S. 538, 547 (1998) (internal quotation marks omitted); *see also United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011) (per curiam) ("[A] state prisoner may not rely on Rule 60(b) to raise a new claim in federal habeas proceedings that would otherwise be barred as second or successive under § 2254."), *cert. denied*, 132 S. Ct. 342 (2011).

AEDPA generally limits a petitioner to one federal habeas corpus motion and precludes "second or successive" habeas corpus petitions unless the petitioner meets certain narrow requirements. *See* 28 U.S.C. § 2244(b). The statute provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless" it "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable" or on newly discovered facts that show a high probability of actual innocence. *Id.* § 2244(b)(2)(A)–(B); *see also Gonzalez*, 545 U.S. at 529–30.

Because of the difficulty of meeting this standard, habeas corpus petitioners at times have characterized their second or successive habeas corpus petitions as Rule 60(b) motions. But "[w]hen a Rule 60(b) motion is actually a disguised second or successive § 225[4] motion, it must meet the criteria set forth in" 28 U.S.C. § 2244(b)(2). *See Washington*, 653 F.3d at 1059–60 (discussing a second or successive 28 U.S.C. § 2255 petition); *see also Gonzalez*, 545 U.S. at 528.

Our analysis of whether Jones's motion is a valid Rule 60(b) motion or a disguised 28 U.S.C. § 2254 habeas corpus petition is informed by the Supreme Court's decision in *Gonzalez v. Crosby*. *See Washington*, 653 F.3d at 1062. Neither *Gonzalez* nor any other Supreme Court case has "adopted a bright-line rule for distinguishing between a bona fide Rule 60(b) motion and a disguised second or successive [§ 2254] motion." *Id.* at 1060. Rather, *Gonzalez* held that a legitimate Rule 60(b) motion "attacks . . . some defect in the integrity of the federal habeas proceedings," while a second or successive habeas corpus petition "is a filing that contains one or more 'claims,'" defined as "asserted federal bas[e]s for relief from a state court's judgment of conviction." 545 U.S. at 530, 532. Put another way, a motion that does not attack "the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably" raises a claim that takes it outside the bounds of Rule 60(b) and within the scope of AEDPA's limitations on second or successive habeas corpus petitions. *Id.* at 532 n.5.

Proper Rule 60(b) motions include those alleging fraud on the federal habeas corpus court, as well as those in which the movant "asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* at 532 nn.4 & 5.

By contrast, Rule 60(b) motions presenting "claims" such that they constitute, in effect, new requests for relief on the merits include motions to present "newly discovered evidence . . . in support of a claim previously denied," as well as motions contending that "a subsequent change in substantive law is a reason justifying relief . . . from the previous denial of a claim." *Id.* at 531 (citations omitted) (internal quotation marks omitted). Further, "an attack based on . . . habeas counsel's omissions" generally does not go to the integrity of the proceedings; rather, it is a disguised second or successive 28 U.S.C. § 2254 habeas corpus petition masquerading as a Rule 60(b) motion. *Id.* at 532 n.5. Such a motion, "although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Id.* at 531.

In light of these principles, we must determine whether Jones's motion alleges a "defect in the integrity of the federal habeas proceedings" and thus presents a legitimate Rule 60(b) motion, or whether, as the district court ruled, it raises "claims" and, "although labeled a Rule 60(b) motion, is in substance a successive habeas petition [that] should be treated accordingly." *Id.* at 531, 532. "In conducting this analysis, we consider separately each of the contentions that are on appeal." *Washington*, 653 F.3d at 1064. We consider here Jones's three ineffective-assistance-of-trial-counsel claims raised under *Martinez* and his one *Brady* claim.

## A

Seeking to reopen his federal habeas corpus proceedings under Rule 60(b), Jones alleges three ineffective-assistance-of-trial-counsel claims that were neither presented in state post-conviction proceedings nor included in his initial federal habeas corpus petition. First, Jones argues, his trial counsel did not challenge the admissibility of evidence generated by the electronic monitoring system that was used to track a prosecution witness. Second, Jones contends that his trial counsel did not call a key rebuttal witness whose testimony, Jones alleges, would have undercut that of one of the prosecution's witnesses. Third, Jones argues that his trial counsel did not object to the state sentencing court's alleged application of an unconstitutional causal nexus test, in violation of *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

Jones contends that he did not have a "fair shot" at raising these ineffective-assistance-of-trial-counsel claims in his first habeas corpus proceeding because his habeas corpus counsel, Daniel Maynard, was also his state post-conviction relief counsel. As a result, Jones's argument proceeds as follows: Maynard operated under a *per se* conflict of interest during Jones's habeas corpus proceeding that precluded him from objectively evaluating the thoroughness of the ineffective-assistance-of-trial-counsel claims he brought at the state level. In other words, Jones argues, for Maynard to have brought, at Jones's first federal habeas corpus proceeding, the three ineffective-assistance-of-trial-counsel claims that Jones now seeks to raise in his purported Rule 60(b) motion, Maynard in effect would have had to allege his own ineffective assistance in not bringing such claims at the state post-conviction relief stage.

Jones's argument is premised on the Supreme Court's decision in *Martinez*, which by its terms created a "narrow exception," 132 S. Ct. at 1315, to the well-established rule in *Coleman v. Thompson*, 501 U.S. 722 (1991), that state post-conviction relief counsel's ineffective assistance cannot serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim. *Martinez* held that, in some circumstances, the ineffective assistance of state post-conviction relief counsel can serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim. 132 S. Ct. at 1315. In light of *Martinez*, Jones contends that Maynard limited the claims of ineffective assistance of trial counsel raised on habeas review because he had a "strong disincentive" to raise those that would have required him to assert his own ineffectiveness during state post-conviction relief proceedings.

We reject Jones's argument for three reasons. First, the Supreme Court in *Gonzalez* said that "an attack based on . . . habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." 545 U.S. at 532 n.5. The Court in *Gonzalez* was careful to explain how Rule 60(b) could not be used to get a second chance to assert new claims.

Second, even if habeas corpus counsel's conflict of interest could, in some circumstances, be a defect in the integrity of the proceedings assailable under Rule 60(b), Maynard's alleged conflict in Jones's case does not constitute such a defect. Jones filed his first petition for habeas corpus relief nearly eight years before *Martinez* was decided. The district court denied the petition more than two years before the rule in *Martinez* was announced. At all times during

Maynard's representation of Jones in the first habeas corpus proceeding, *Coleman*'s rule that state post-conviction relief counsel's ineffective assistance could not serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim was settled law. As a result, it cannot be argued that the integrity of Jones's first habeas corpus proceeding is in doubt, because a proceeding is not without integrity when in accord with law. We reject Jones's argument that Maynard was ineffective at Jones's first habeas corpus proceeding for not trying to make Jones's case *Martinez* long before the Supreme Court granted certiorari in *Martinez*.

Third, the rule announced in *Gonzalez*, that a valid Rule 60(b) motion "attacks . . . some defect in the integrity of the federal habeas proceedings," *id.* at 532, must be understood in context generally to mean the integrity of the prior proceeding with regard to the claims that were actually asserted in that proceeding. "That [Jones] did not raise in his first [habeas] proceeding the claim[s] he wants to raise here does not render the adjudication of the claims that he *did* raise suspect." *Buenrostro*, 638 F.3d at 722. Rule 60(b) does not permit a petitioner to assert entirely new claims, i.e. "asserted federal bas[e]s for relief from a state court's judgment of conviction," *Gonzalez*, 545 U.S. at 530, that the petitioner contends were required to ensure those proceedings' integrity. *Martinez*, then, did not change the rule in *Gonzalez* that Rule 60(b) cannot be used as a vehicle to bring new claims. *Martinez* did not purport to overrule *Gonzalez*, nor is its language irreconcilable with that case's central holding. *Gonzalez* firmly stands for the principle that new claims cannot be asserted under the format of a Rule 60(b) motion, and instead Rule 60(b) is properly applied when there is some

problem going to the integrity of the court process on the claims that were previously asserted.

None of Jones's arguments amounts to an allegation of a "defect in the integrity of the federal habeas proceedings" that constitutes grounds for a legitimate Rule 60(b) motion. *Id.* at 532. Rather, Jones is in essence arguing that he deserves "a second chance to have the merits determined favorably" in the context of a second or successive 28 U.S.C. § 2254 habeas corpus petition. *Id.* at 532 n.5. But the new claims asserted by Jones are "precisely the sort of attack on the 'federal court's previous resolution of a claim on the merits' . . . that *Gonzalez* characterized as a 'claim' which is outside the scope of Rule 60(b)." *Washington*, 653 F.3d at 1064 (citation omitted) (quoting *Gonzalez*, 545 U.S. at 532).

**B**

Jones also alleges that the State, during his federal habeas corpus proceedings, violated *Brady* by suppressing exculpatory evidence related to the electronic monitoring system used to track key prosecution witness David Nordstrom, who Jones says committed the murders for which he was convicted. Jones asserts that the State was on notice, based on two of his initial habeas corpus claims, of the possible malfunction of the monitoring system and further that the State had a duty to investigate his claims and to disclose the results of its investigation to Jones.

There are three problems with Jones's argument. First, as the trial court noted, "it is highly questionable whether the type of evidence [Jones] alleges [the State] should have procured and disclosed has any relevancy to the [ineffective-assistance-of-trial-counsel] claims raised in [Jones's] federal

habeas petition." *Jones*, 2013 WL 5348294, at \*5. Under *Brady*, the prosecution may not suppress, but rather must disclose, "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 85. Evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotation marks omitted). "A 'reasonable probability' of a different result [exists] when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks omitted). Here, where the relevant evidence is not in possession of the police or the prosecution, and where Jones has failed to make a showing that the evidence would in fact impeach David Nordstrom's testimony, we cannot say that the evidence is "material" for *Brady* purposes. Because "second-in-time *Brady* claims that do not establish materiality of the suppressed evidence are subject to dismissal under" 28 U.S.C. § 2244(b), *United States v. Lopez*, 577 F.3d 1053, 1066 (9th Cir. 2009), our inquiry could end here.

Second, even if the evidence Jones seeks were assumed to be material, the *Brady* right of pretrial disclosure available to defendants at trial does not extend to habeas corpus petitioners seeking post-conviction relief. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68–69 (2009) (noting that upon conviction, a criminal defendant "does not have the same liberty interests as a free man" and "has only a limited interest in postconviction relief"). In *District Attorney's Office for the Third Judicial District v. Osborne*, the Supreme Court stated that, "*Brady* is the wrong framework" for evaluating a

convicted defendant's due process rights in post-conviction relief proceedings. *Id.* at 69. The State had no duty to disclose evidence, exculpatory or otherwise, in Jones's initial federal habeas corpus proceeding.

Third, even if the alleged evidence were material and even if Jones, as a habeas corpus petitioner seeking post-conviction relief, were entitled to the protections of *Brady*, he would still not be entitled to the evidence he seeks because that evidence was not in possession of the State, and hence cannot be said to have been suppressed by the State. To comply with *Brady*, a prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Strickler*, 527 U.S. at 281 (internal quotation marks omitted). Here, Behavioral Intervention, Inc. ("BI"), which manufactured the electronic monitoring device used to track David Nordstrom, was not "acting on the government's behalf in this case." Rather, BI was merely in a contract with the state to provide monitoring equipment for parolees and other persons in Pima County released to home confinement as a condition of their supervision by the Arizona Department of Corrections. Jones alleges that BI knew its device had problems, not that the State knew of those problems. "The prosecution is under no obligation to turn over materials not under its control." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991). Jones had equal access to information regarding BI's alleged problems as did the State, as evidenced by his attaching to his Rule 60(b) motion news stories from 1997 and 1998 documenting such problems. Jones cannot now complain that the State violated *Brady* at the habeas corpus stage "by not bringing the evidence to [his] attention." *See Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (internal quotation marks omitted).

To sum up, it is speculative whether the evidence Jones seeks from BI would have been favorable to Jones, there is no *Brady* obligation during habeas corpus proceedings under *Osborne*, and there is no way the information can be considered to have been suppressed by the State. There was no *Brady* violation.

Pursuant to the Supreme Court's instructions in *Gonzalez*, we have examined each claim in Jones's Rule 60(b) motion to determine whether it alleges a defect in the integrity of the prior federal habeas corpus proceeding or instead presents "claims" constituting a renewed request for relief on the merits. *See Washington*, 653 F.3d at 1066. Because we have determined that Jones's purported Rule 60(b) motion is in fact a disguised 28 U.S.C. § 2254 habeas corpus petition, we affirm the district court's dismissal of the motion in light of Jones's failure to comply with the "stringent standard for presenting a second or successive" 28 U.S.C. § 2254 habeas corpus petition laid out in 28 U.S.C. § 2244(b). *Id.* at 1065. Before he brought his disguised Rule 60(b) motion, Jones did not move in this court for an order "authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Because we have not yet authorized Jones to file such a petition, we hold that the district court was without jurisdiction to entertain Jones's "successive (albeit disguised)" 28 U.S.C. § 2254 habeas corpus petition. *See Washington*, 653 F.3d at 1065.

## III

Assuming for the sake of argument that Jones's motion is permissible under Rule 60(b) as a challenge to a defect in the integrity of his prior habeas corpus proceedings under *Gonzalez*, an assumption we are willing to make to expedite

and promote a full review in this death penalty context, we address whether Jones has satisfied the standards for relief from judgment under that Rule. While it is ordinarily a district court that conducts this inquiry in the first instance, "appellate courts may, in their discretion, decide the merits of a Rule 60(b) motion in the first instance on appeal." *Phelps v. Alameida*, 569 F.3d 1120, 1134–35 (9th Cir. 2009) (citing *Gonzalez*, 545 U.S. at 536–38). Exercising that discretion now, again with the purpose to expedite, we hold alternatively that Jones has not met the standard for relief under Rule 60(b), in light of the relevant factors identified in *Phelps v. Alameida*, and we deny him relief.

As outlined above, Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez*, 545 U.S. at 528. Rule 60(b)(6), the provision under which Jones brought his motion, permits reopening for "any . . . reason that justifies relief" other than the more specific reasons set out in Rule 60(b)(1)–(5). Fed. R. Civ. P. 60(b); *see Gonzalez*, 545 U.S. at 528–29. A movant seeking relief under Rule 60(b)(6) must show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann*, 340 U.S. at 199). Such circumstances "rarely occur in the habeas context." *Id.* Our decision in *Phelps* identified six factors to guide our determination regarding when a petitioner seeking relief under Rule 60(b) demonstrates such "extraordinary circumstances." 569 F.3d at 1135. These factors are particularly useful when, as here, we are asked to apply Rule 60(b)(6) to a rejected petition for habeas corpus. *Id.* at 1135 n.19.

Jones contends that *Martinez* created a change in the law that constituted "extraordinary circumstances" such that Rule 60(b) relief is warranted. We have held that "the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court." *Id.* at 1133. A decision to grant Rule 60(b)(6) relief, then, is a "case-by-case inquiry" that requires us to balance numerous factors, but it is clear that "a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case." *Id.* (internal quotation marks omitted). We evaluate Jones's argument in light of the six factors articulated in *Phelps.*

The first factor is a change in the law. *Id.* at 1135–36. Jones argues that *Martinez* was a "sea change in the Supreme Court's procedural jurisprudence that requires relief from judgment in this captial habeas corpus case." But in *Lopez v. Ryan*, 678 F.3d 1131 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 55 (2012), we stated that *Martinez* was a "remarkable— if 'limited'—development in the Court's equitable jurisprudence" that "weigh[s] slightly in favor of reopening [the petitioner's] habeas case." *Id.* at 1136 (quoting *Martinez*, 132 S. Ct. at 1319). This factor weighs slightly in Jones's favor.

The second factor is the petitioner's exercise of diligence in pursuing his claim for relief. *Phelps*, 569 F.3d at 1136. Jones filed his Rule 60(b) motion on August 21, 2013, more than 17 months after the Supreme Court decided *Martinez* on March 20, 2012. Jones contended in his motion that 17 months "is not significant in the history of a capital case," and that the delay was attributable to his prior, allegedly conflicted counsel Maynard who had a "disincentive to re-

evaluate the record and the claims he earlier brought . . . or to perform any additional investigation." Jones now argues that his "delay has not been unreasonable" because "newly-appointed, non-conflicted counsel" filed the Rule 60(b) motion less than four months after appointment. This factor has little weight in either direction.

The third factor is whether granting the Rule 60(b) motion to reopen the case would upset "the parties' reliance interest in the finality of the case." *Id.* at 1137. Jones, noting that "[t]here is no such thing as a partial execution," argues that because he has not been executed, the State cannot claim a reliance interest on any already executed judgments. But this is not so. Jones's execution warrant, which set his execution date, issued on August 27, 2013, and as we held in *Lopez*, "[t]he State's and the victim[s'] interests in finality, especially after a warrant of execution has been obtained and an execution date set, weigh against granting post-judgment relief." 678 F.3d at 1136. This factor weighs strongly against Jones.[4]

The fourth factor "examines the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." *Phelps*, 569 F.3d at 1138 (internal quotation marks omitted). This factor stands for the "principle that a change in the law should not indefinitely render preexisting judgments subject

---

[4] An Arizona execution warrant expires 24 hours from the date it sets for the execution. Ariz. R. Crim. P. 31.17(c)(3). Jones's warrant sets his execution for October 23, 2013, and therefore expires the next day. Because it would take far longer than that to reopen and adjudicate the claims Jones now wishes to pursue, the State would be forced to obtain a new warrant if Jones is allowed to proceed but then loses. Thus, the likely need to restart the entire execution process must be considered in weighing the State's interest in finality.

to potential challenge." *Id.* The Supreme Court denied certiorari on Jones's initial habeas corpus petition on June 17, 2013, and Jones filed his Rule 60(b) motion in the district court on August 21, 2013. This two-month gap was not a long "delay." This factor weighs slightly in Jones's favor.

The fifth factor looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law. *Id.* at 1138–39. Jones argues that "*Martinez* confers an equitable remedy to excuse" his habeas corpus counsel's alleged *per se* conflict of interest and that he should be restored to the *status quo ante*. *Martinez*, however, says nothing about conflicts of interest, nor does it overrule the proposition in *Gonzalez* that "an attack based on . . . habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings." 545 U.S. at 532 n.5. This factor weighs heavily against Jones.

The sixth factor concerns comity. *Phelps*, 569 F.3d at 1139. In *Phelps*, we said that "we need not be concerned about upsetting the comity principle when a petitioner seeks reconsideration not of a judgment on the *merits* of his *habeas* petition, but rather of an *erroneous* judgment that prevented the court from ever *reaching* the merits of that petition." *Id.* Phelps was appealing the dismissal of his habeas corpus petition as untimely; granting his Rule 60(b) motion would not have upset principles of comity. Here, though, Jones seeks to bring merits claims disguised as a Rule 60(b) motion because his initial habeas corpus petition was already fully adjudicated on the merits and denied. Granting his motion would upset principles of comity. This factor weighs strongly against Jones.

The equitable factors described above give little support for reopening Jones's case. On balance, the Supreme Court's decision in *Martinez* does not constitute such an "extraordinary circumstance" as to warrant reopening of Jones's case under Rule 60(b)(6), even were we to disregard that Jones's assertion of new claims takes him outside of Rule 60(b). *See Gonzalez*, 545 U.S. at 536 ("It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation.").

## IV

Given the expedited nature of this appeal and its death penalty context, we now construe Jones's appeal as a request for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court pursuant to 28 U.S.C. § 2244(b)(3)(A). *See, e.g.*, *Washington*, 653 F.3d at 1065 (doing the same); *Cooper v. Calderon*, 274 F.3d 1270, 1274–75 (9th Cir. 2001) (per curiam) (doing the same); *Thompson*, 151 F.3d at 922 ("Certainly, if at all possible, a decision upon whether a successive application should be granted . . . should be decided on the merits rather [than] having a person executed because of time constraints and procedural niceties."); *cf. Libby v. Magnusson*, 177 F.3d 43, 46 (1st Cir. 1999) ("[N]o useful purpose would be served by forcing the petitioner to retreat to square one and wend his way anew through the jurisdictional maze. We have the power, in the exercise of our informed discretion, to treat this appeal as if it were . . . a motion for authority to proceed

under section 2244(b)(3)(A) . . . and we will do so." (citations omitted)).**5**

---

**5** So construed, we reject Jones's application for the reasons stated in the opinion. Jones also filed yesterday, in No. 13-73647, a separate application for leave to file a second or successive habeas corpus petition. In his application, Jones seeks permission to pursue a freestanding claim of actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995), and a claim that the State violated his due process rights by withholding potentially exculpatory evidence under *Brady*. *Schlup* requires a habeas petitioner pursuing a claim of actual innocence to show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" before he will be granted relief. *Id.* at 327. Jones argues that it is an open question whether it is this test or AEDPA's more restrictive standard for filing a second or successive petition, *see* 28 U.S.C. § 2244(b)(2)(B), that applies to freestanding claims of actual innocence. *See Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc).

Without deciding that question here, we conclude that even if the *Schlup* standard applies to Jones's actual innocence claim, its requirements have not been satisfied. Jones has not shown that the evidence he seeks would exonerate him. Indeed, Jones concedes that, "[i]t may be that [he] will not prevail" even if he obtains discovery, and he can only state that the evidence he seeks "could" exculpate him. Such speculative theories do not show "that it is more likely than not that no reasonable juror would have convicted [Jones] in the light of the new evidence." *Schlup*, 513 U.S. at 327. *Schlup* exists to protect petitioners with legitimate claims of actual innocence, not to permit exploratory proceedings in a second or successive habeas corpus petition, by a petitioner who has arrayed against him strong evidence of guilt.

This result is informed by and consistent with our analysis of Jones's similar *Brady* claim that he brought as part of his Rule 60(b) motion. Both claims rely on the theory that the electronic monitoring records would erode David Nordstrom's credibility. The Rule 60(b) version of this claim failed the 28 U.S.C. § 2244(b)(2)(B) standard for largely the same reason that this version fails the *Schlup* standard: even if the electronic monitoring evidence shows what Jones wants it to show, it is not sufficiently exculpatory.

Construing Jones's appeal as a belated request for authorization to file a second or successive habeas corpus petition in the district court, we deny his request to do so for failure to comply with the "stringent standard for presenting a second or successive" 28 U.S.C. § 2254 habeas corpus petition laid out in 28 U.S.C. § 2244(b)(2). *Washington*, 653 F.3d at 1065.

Before AEDPA was enacted in 1996, "a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions" known as the abuse-of-the-writ doctrine guided federal courts in their consideration of second or successive habeas corpus petitions. *McCleskey v. Zant*, 499 U.S. 467, 489 (1991); *see also Lopez*, 577 F.3d at 1059. AEDPA codified the judicially established principles of the abuse-of-the-writ doctrine and "greatly restrict[ed] the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." *Tyler v. Cain*, 533 U.S. 656, 661 (2001); *see also Lopez*, 577 F.3d at 1060–61. Indeed, a petitioner is generally limited to one federal habeas corpus motion, and AEDPA permits second or successive motions "only in limited circumstances." *Dodd v. United States*, 545 U.S. 353, 359 (2005). Those limited circumstances are set forth in 28 U.S.C. § 2244(b), which provides:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed;

> (2) A claim presented in a second or successive habeas corpus application under

section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b). Because Jones filed his motion after April 24, 1996, the effective date of AEDPA, his case is governed by that statute's stringent standards.

"Permitting a state prisoner to file a second or successive federal habeas corpus petition is not the general rule, it is the exception, and an exception that may be invoked only when the demanding standard set by Congress is met." *Bible v. Schriro*, 651 F.3d 1060, 1063 (9th Cir. 2011) (per curiam). Before a petitioner may file a second or successive habeas corpus petition in the district court, he must seek authorization from the relevant court of appeals. 28 U.S.C. § 2244(b)(3)(A). Construing Jones's appeal as a request for

such authorization, we may not grant Jones what he seeks unless we determine that he has made a prima facie showing that his application satisfies the requirements outlined above. *Id.* § 2244(b)(3)(C); *see also Pizzuto v. Blades*, 673 F.3d 1003, 1007 (9th Cir. 2012). We consider now whether he has made such a showing.

It is undisputed that none of the claims Jones raises in his pending motion were included in his first federal habeas corpus petition. Whether he may bring these claims now, then, rests on whether Jones has satisfied one of the two "narrow exceptions" codified in 28 U.S.C. § 2244(b)(2)— namely whether he has shown that (1) his claims rely on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court; or (2) new facts, previously undiscoverable, if proven, would establish his actual innocence by clear and convincing evidence. *See Gonzalez*, 545 U.S. at 530.

**A**

AEDPA permits second or successive review of a claim that "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). This provision sets forth three prerequisites for a permissible second or successive petition: (1) the claim must rely on a "new rule of constitutional law"; (2) the rule must have been "made retroactive to cases on collateral review by the Supreme Court"; and (3) the claim must have been "previously unavailable." *See Tyler*, 533 U.S. at 662. "[T]he Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive," and it only does so "through a holding." *Id.* at 663 (alteration in original).

Jones's *Brady* claim certainly does not rely on a new rule of constitutional law. His ineffective-assistance-of-trial-counsel claims, however, rely on the Supreme Court's decision in *Martinez*, which held that, in some circumstances, the ineffective assistance of state post-conviction relief counsel can serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim. 132 S. Ct. at 1315. To present his claims under this prong of the 28 U.S.C. § 2244(b)(2) test, Jones must show that *Martinez* set forth a new, retroactively applicable rule of constitutional law that was not previously available. While "there can be no dispute that a decision announces a new rule if it expressly overrules a prior decision," *Graham v. Collins*, 506 U.S. 461, 467 (1993), *Martinez* did not expressly overrule any prior decision, including *Coleman*. Rather, *Martinez* "qualifie[d] *Coleman* by recognizing a narrow exception" to that case's rule that state post-conviction relief counsel's ineffective assistance cannot serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim. 132 S. Ct. at 1315. Perhaps more importantly, the Supreme Court characterized its decision in *Martinez* as an "equitable ruling," and not a "constitutional" one. *Id.* at 1319. That spells the end of the new-rule exception for a second or successive petition in Jones's case because the rule of *Martinez*, while new, is not a rule of constitutional law. Further, we have consistently recognized that *Martinez* was not a constitutional decision. *See, e.g.*, *Detrich v. Ryan*, No. 08-99001, 2013 WL 4712729, at *3 (9th Cir. Sept. 3, 2013) (en banc) ("[T]he Court established an equitable rule . . . ."); *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012) (published order) ("*Martinez* did not decide a new rule of constitutional law . . . .").

Because *Martinez* did not decide a new rule of constitutional law, it cannot underpin a second or successive habeas corpus petition under 28 U.S.C. § 2244(b)(2)(A). *See Buenrostro*, 697 F.3d at 1139 ("*Martinez* cannot form the basis for an application for a second or successive motion because it did not announce a new rule of constitutional law."). Other circuits have agreed. *See, e.g.*, *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (describing the exception established in *Martinez* as an "equitable—as opposed to constitutional—exception" (internal quotation marks omitted)); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012) ("*Martinez* does not provide a basis for authorization under § 2244(b)(2)(A), as the Court's decision was an 'equitable ruling' that did not establish 'a new rule of constitutional law.'" (quoting *Martinez*, 132 S. Ct. at 1319)). Because *Martinez* was not a constitutional ruling, Jones's ineffective-assistance-of-trial-counsel claims presented here cannot be said to "rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).[6]

Congress, when it passed AEDPA, set forth a "stringent standard for presenting a second or successive" 28 U.S.C. § 2254 habeas corpus petition. *Washington*, 653 F.3d at 1065. So while the Supreme Court used *Martinez* to establish a new (equitable) rule regarding what may serve as cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim, the suggestion that *Martinez*'s equitable

---

[6] Having determined that *Martinez* did not set forth a new rule of constitutional law, we need not, and do not, reach the question of whether the Supreme Court has made its holding in *Martinez* retroactively applicable to cases on collateral review.

holding modifies AEDPA's statutory language is wrong and flies in the face of normal juristic principles. Equity may inform our interpretation of statutory language, but it cannot supplant specific statutory standards or rewrite the statutory text.

**B**

Because Jones cannot show that his claims rely on a new rule of constitutional law, his only avenue for authorization to file a second or successive petition is 28 U.S.C. § 2244(b)(2)(B), which requires him to "make a prima facie showing to us that his claim (1) is based on newly discovered evidence and (2) establishes that he is actually innocent of the crimes alleged." *King v. Trujillo*, 638 F.3d 726, 729–30 (9th Cir. 2011) (per curiam) (noting that "[f]ew applications to file second or successive petitions . . . survive these substantive and procedural barriers" (alteration and ellipsis in original) (internal quotation marks omitted)). Under this standard, Jones must first demonstrate that the evidence he puts forward now is newly discovered—in other words that it "could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B)(i). And even if Jones could show that his evidence is newly discovered, we would still be compelled to deny his application unless that evidence "would be sufficient to establish by clear and convincing evidence that . . . no reasonable fact-finder would have found [Jones] guilty of the underlying offense." *Bible*, 651 F.3d at 1064 (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)).

Jones's claims fail on both prongs of this analysis. First, Jones has offered no indication that the factual predicate for his current claims could not have been discovered previously

through the exercise of due diligence. The factual predicate underlying each of Jones's three ineffective-assistance-of-trial-counsel claims, of course, occurred more than fifteen years ago at Jones's trial and sentencing. Moreover, the nature of the evidence Jones now proffers was known to him either at trial or sentencing and could have been raised then. For example, trial counsel could have discovered the potential problems associated with Nordstrom's electronic monitoring device at least as early as 1997 or 1998, when reports of such devices' failures made the news. Jones also gives no reason why trial counsel could not have investigated Stephen Coats. Jones has presented no evidence indicating that Coats refused to talk to Jones's investigator or his attorney, and no evidence that Coats was unable to speak with the investigator. And trial counsel's failure to make an *Eddings* claim for the alleged use of an unconstitutional causal nexus test was known to Jones in 1998, at the time of his sentencing. Jones has not explained why, with the exercise of due diligence, he could not have discovered this evidence previously.

The factual predicate behind Jones's *Brady* claim, meanwhile, could also have been discovered years before the filing of the current motion. Jones could have discovered as early as 1997 that BI was aware of technical problems associated with its device. Indeed, Jones proffers as evidence of BI's equipment problems news stories from 1997 and 1998; surely these accounts could have been discovered through the exercise of due diligence long before August 21, 2013. Further, Jones's parole supervisor, Rebecca Matthews, testified at Jones's trial that the monitoring device occasionally generated "some static" or a "busy signal" when activated by a call from the computer in Phoenix. Jones was on notice in the late 1990s of the facts underlying his current claims.

Even if Jones's claims did rest on newly discovered evidence, however, he would be unable to show that the facts supporting those claims establish his actual innocence by clear and convincing evidence. On this point, we are bound by AEDPA's requirements for presenting a second or successive habeas corpus petition. Under these requirements, the relevant question is not whether Jones's jury would have acquitted him, but whether "in light of the evidence as a whole . . . no reasonable factfinder would have found [him] guilty of the underlying offense[s]." 28 U.S.C. § 2244(b)(2)(B)(ii). Jones's causal nexus claim is not at all related to actual innocence, while his remaining two ineffective-assistance-of-trial-counsel claims and his *Brady* claim, even if the facts were true, would not establish by clear and convincing evidence that Jones did not commit the crimes for which he was sentenced to death.

This is so in large part due to the strength of the other evidence against Jones. Included among this evidence were bullets and shell casings found at the crime scenes and an autopsy of the victims matching the calibers of the weapons Jones and his accomplices carried; descriptions from survivors of the Moon Smoke Shop robbery that matched both Jones and his truck; testimony from two witnesses at trial that their first thought upon seeing the police sketches of the Moon Smoke Shop robbery suspects was that one of them was Jones; testimony that Jones told multiple people who asked if he was involved in the crimes, "[i]f I told you, I'd have to kill you," *Jones*, 691 F.3d at 1099 (alteration in original); and testimony from David Evans. Evans testified that Jones changed his appearance by cutting and dyeing his hair and beard from red to black after the murders; that he was told by Jones, "you don't leave witnesses" after "giving Jones a hard time about his similarity to the sketches"; and

that Jones went to Phoenix twice in 1996, on one occasion explaining his trip by saying he could not stay in Tucson because "he thought some people would be looking for him because he had killed somebody." Considering the weight of this other evidence, we conclude that Jones has failed to show by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offenses for which he was convicted, even if he could prove that the evidence he puts forward now is true. *See* 28 U.S.C. § 2244(b)(2)(B)(ii).

## C

"Section 2244(b)(2) applies not only to the underlying conviction but also to the imposition of the death penalty." *Pizzuto*, 673 F.3d at 1010. Jones, to succeed, must establish "by clear and convincing evidence that . . . no reasonable factfinder would have found [him] guilty" of the aggravating factors used to justify his death sentence. 28 U.S.C. § 2244(b)(2)(B)(ii). "A claim of actual innocence of the death penalty would require a showing that one of the statutory aggravators or other requirements for the imposition of the death penalty had not been met." *Beaty v. Schriro*, 554 F.3d 780, 784 (9th Cir. 2009) (published order). Mitigating factors are not considered in this context. *See Sawyer v. Whitley*, 505 U.S. 333, 345 (1992) ("If federal habeas review of capital sentences is to be at all rational, petitioner must show something more in order for a court to reach the merits of his claims on a successive habeas petition than he would have had to show to obtain relief on his first habeas petition.").

Under Arizona law at the time of Jones's sentencing, the sentencing judge was required to impose a sentence of death

if the judge found one or more of ten statutory aggravating circumstances to have been established beyond a reasonable doubt and that "there are no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. § 13-703 (1993). The trial court, Judge Leonardo, found the existence of five statutory aggravating factors beyond a reasonable doubt: (1) Jones had been convicted of another offense for which, under Arizona law, a sentence of life imprisonment or death could be imposed; (2) Jones was previously convicted of a serious offense; (3) Jones committed the offense in expectation of the receipt of pecuniary value; (4) Jones committed the offense while on authorized release from the state department of corrections; and (5) Jones was convicted of one or more other homicides committed during the commission of the offense. *See id.*; *Jones*, 4 P.3d at 364–65.

At the very least, Jones cannot overcome the last of these statutory aggravating factors—that he committed multiple murders during the commission of the two robberies. As discussed above, Jones has not shown by clear and convincing evidence that he is actually innocent of any of the murders for which he was convicted. It follows that he cannot show that imposition of the death penalty is legally unwarranted because any one of the aggravating factors was individually enough to support his death sentence. *See Pizzuto*, 673 F.3d at 1010.

We conclude that Jones has not presented a prima facie showing that his application satisfies the requirements of 28 U.S.C. § 2244(b). "[T]he second or successive bar marks the end point of litigation even where compelling new evidence of a constitutional violation is discovered . . . . The only prisoner who will not reach that point is the one who

obtains new evidence that could clearly and convincingly prove his innocence or who has the benefit of a new, retroactive rule of constitutional law." *Buenrostro*, 638 F.3d at 726 (citation omitted). Jones is not that prisoner.

**V**

Death penalty cases are exceedingly difficult, testing the skills of advocates and the judgment of judges to a degree not found in more ordinary cases, because of the ultimate penalty that the criminal defendant-appellant is at risk of paying. *Cf. Gregg v. Georgia*, 428 U.S. 153, 188 (1976) ("[T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice."). In these cases, we are fortunate to have the skilled advocacy of both defense counsel and counsel for the State, arguing for their respective sides of the appeal. We are also faced with a complex legal system of sometimes-conflicting precedent and with the heightened emotions that inevitably arise under these cases. Still, even the pressures of death penalty litigation do not permit us to depart from established jurisprudence, and that is what we would do here if we allowed Jones to assert new claims under the guise of a Rule 60(b) motion when such claims should not be permitted unless they satisfy the rigorous standard of 28 U.S.C. § 2244. Applying that standard here, we conclude that Jones may not file a second or successive habeas corpus petition in the district court.

In No. 13-16928, the district court's dismissal of Jones's Rule 60(b) motion is **AFFIRMED**. In the alternative, Jones's motion to seek relief from judgment under Rule 60(b) is **DENIED**. Pursuant to 28 U.S.C. § 2244(b)(3)(A), Jones's as-construed application in No. 13-16928 and his separate

application in No. 13-73647 to file a second or successive habeas corpus petition in the district court are **DENIED**.

Each party shall bear its own costs.