**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEXANDER BALBUENA,
*Petitioner-Appellant*,

v.

WILLIAM JOE SULLIVAN, Warden;
ATTORNEY GENERAL FOR THE STATE
OF CALIFORNIA,
*Respondents-Appellees.*

No. 12-16414

D.C. No.
3:11-cv-00228-
RS

ALEXANDER BALBUENA,
*Petitioner-Appellant*,

v.

WILLIAM JOE SULLIVAN, Warden,
*Respondent-Appellee.*

No. 18-15432

D.C. No.
3:11-cv-00228-
RS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted November 12, 2019
San Francisco, California

Filed August 17, 2020
Amended November 17, 2020

Before:  William A. Fletcher, Mark J. Bennett, and
Bridget S. Bade, Circuit Judges.

Order;
Opinion by Judge Bade;
Concurrence by Judge W. Fletcher

## SUMMARY[*]

### Habeas Corpus

The panel filed an amended opinion, denied a petition for rehearing, and denied on behalf of the court a petition for rehearing en banc, in appeals arising from the district court's denial of (1) Alexander Balbuena's habeas corpus petition in which he argued that the admission of his confession violated his due process rights because the statements were the involuntary product of coercion; and (2) his motion pursuant to Fed. R. Civ. P. 60(b) for relief from judgment to allow him to amend his habeas petition to add a new claim that the admission of his confession violated his *Miranda* rights.

Applying AEDPA's deferential standards of federal habeas review, and affirming the denial of the petition, the panel held that the state court's conclusion that Balbuena's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

confession was voluntary was not contrary to or an unreasonable application of federal law. The panel wrote that the state court did not unreasonably conclude that Balbuena was sixteen years old and considered his age, experience, and maturity as part of the totality of the circumstances of his confession. The panel considered Balbuena's arguments regarding the adequacy of his *Miranda* warnings as part of the totality of the circumstances relevant to his Fourteenth Amendment claim rather than as a separate Sixth Amendment claim, and concluded that the state court's determination that Balbuena was advised of his *Miranda* rights was not objectively unreasonable. The panel wrote that the state court did not unreasonably conclude that the circumstances of the interview, which included the detectives' limited references to Balbuena's unborn child, use of "alternative scenarios," and implied offers of leniency were not coercive. The panel wrote that a video recording of the interview refutes Balbuena's argument that those tactics overbore his will and rendered his confession involuntary.

The panel held that the district court properly denied Balbuena's Rule 60(b) motion as an unauthorized second or successive petition under 28 U.S.C. § 2244(b)(3)(A). Balbuena argued that the district court should have considered his Rule 60(b) motion as a motion to amend his habeas petition because he filed it while his appeal from the denial of his habeas petition remained pending before this court and that his claim therefore was not "fully adjudicated." The panel wrote that a Rule 60(b) motion that asserts a new claim is a disguised habeas corpus petition that is subject to the requirements of § 2244(b), and that because Balbuena neither sought nor obtained authorization from this court to file a second or successive habeas petition, the district court lacked jurisdiction to consider his new claim.

The panel rejected Balbuena's contention that even if his Rule 60(b) motion is a disguised habeas petition, it is not a second or successive petition under § 2244(b) because the denial of his initial petition was pending on appeal.

Concurring in the result, Judge W. Fletcher agreed that the state court did not unreasonably conclude that Balbuena's confession was voluntary. He also agreed that *Beaty v. Schriro*, 554 F.3d 780, 783 n.1 (9th Cir. 2009), requires the panel to hold that Balbuena's Rule 60(b) motion was a second or successive habeas petition, even though it was filed while an appeal on his initial habeas petition was awaiting adjudication in this court. He wrote separately to register his disagreement with *Beaty* and to urge the Supreme Court to recognize the circuit split and to adopt the rule stated in *Ching v. United States*, 298 F.3d 174, 178 (2d Cir. 2002), and *United States v. Santarelli*, 929 F.3d 95, 104–05 (3d Cir. 2019).

## COUNSEL

Scott A. Sugarman (argued), Sugarman & Cannon, San Francisco, California, for Petitioner-Appellant.

Jill M. Thayer (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General; Gerald A. Engler, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Respondents-Appellees.

**ORDER**

The opinion filed on August 17, 2020 and published at 970 F.3d 1176 is amended by the opinion filed concurrently with this order.

With this amended opinion, the panel has voted to deny the petition for rehearing and rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. Accordingly, the petition for rehearing and rehearing en banc is **DENIED.** No further petitions for panel rehearing or rehearing en banc may be filed.

---

**OPINION**

BADE, Circuit Judge:

In these consolidated appeals, Alexander Balbuena challenges the district court's denial of his federal habeas petition, and its denial of his Federal Rule of Civil Procedure 60(b) motion to set aside the judgment and amend his habeas petition to add a new claim. For his role in a gang-related shooting, a jury convicted Balbuena of first-degree murder, attempted murder, and street terrorism. Balbuena argues that the state court's admission of his confession violated his due process rights because it was the involuntary product of coercion. Balbuena also argues that his Rule 60(b) motion was a proper motion to amend his habeas petition and not a disguised second or successive petition subject to 28 U.S.C. § 2244. We affirm in both matters.

## I.

## A.

On January 17, 2006, Jose Segura was shot and killed while sitting in his car with Oralia Giron, and their children. According to Giron, several men surrounded the car. The man standing nearest to Segura said that the men wanted revenge for the murder of "Gizmo" and then shot a gun, killing Segura.[1] Giron was also shot and injured during the encounter, but fortuitously Segura's and Giron's three-year-old daughter and three-month-old son were not injured.

Police detectives investigating the murder scene found shell casings on the street for .32-caliber and 9-millimeter handguns, and bullet fragments in the car and a fence. They searched a nearby house, pursuant to a search warrant, and found a .38-caliber handgun and ammunition for .22-caliber and 9-millimeter handguns. Kristina Lawson, who rented a room in the house from Juan Herrera (a/k/a Willow), told officers that she saw Balbuena and Julius Stinson (a/k/a Jukas or Jujakas) with guns just before the shooting. She also stated that she heard gun shots, saw Balbuena and Stinson running to the house, and saw Balbuena enter the house apparently trying to hide a gun under a couch. She also said that, later in the day at the "Green Store," Balbuena told her that he shot Segura in the forehead.[2]

---

[1] Luis Ochoa (a/k/a Gizmo) had been shot and killed the previous day.

[2] Balbuena lived in an apartment known to be affiliated with the street gang Richmond Sur Trece in a neighborhood called the "RST compound." The RST compound included the "Green Store" that only RST gang members could use to sell narcotics.

After interviewing Lawson, the detectives drove her to the apartment building where she said Balbuena lived and she pointed out his apartment.[3]  Around 2:00 a.m., after obtaining a warrant, the detectives found Balbuena in his apartment asleep with his pregnant girlfriend and arrested him.[4]

**B.**

Balbuena was taken to a police station where two detectives questioned him, for approximately ninety minutes, starting at about 2:45 a.m.  Balbuena, who was around sixteen years old, had no prior arrests.  Before the detectives started the interview, Balbuena asked a police officer if he could use the restroom.  The police officer responded that it was "up to [the detectives]" and that Balbuena could "ask them."  When the detectives entered the

---

[3] Immediately after the interview at the house, Lawson made similar statements in a recorded interview at the police station.  Lawson testified at trial and recanted the statements that she made at her house and in the recorded interview.  At the time of the interviews, Lawson was fifteen years old and had some connection to Balbuena.  When officers arrested Balbuena, he was in bed with his girlfriend and a child who was Lawson's son.  Lawson also told detectives that Balbuena lived with her sister-in-law.

[4] Several months later, the detectives also recorded an interview with another witness, Kay Daniels.  Daniels was in federal custody for drug-related offenses and wanted to trade information for a reduction in his sentence.  Daniels said that a few days after Gizmo's murder, he was outside Herrera's house with Herrera, Balbuena (a/k/a Jay Leno), the "dude that used to work at Beacon," and Lawson, when Stinson arrived.  Herrera, the "dude that used to work at Beacon," and Stinson ran up to a car, and then Daniels heard several shots.  Daniels identified Stinson and the "dude that used to work at Beacon" as the shooters.  Daniels saw Herrera run back to his house with two guns.  He was unsure of Balbuena's movements; he "didn't really see him too much."

interview room, Balbuena told them he was "cool." Near the end of the interview, Balbuena asked, and was permitted, to use the restroom.

At the beginning of the interview, one of the detectives read Balbuena his *Miranda* rights as follows:

> So, you know you have the right to remain silent anything you say can be used against you in a court, you have the right to an attorney, you have the right to an attorney prior to your questioning if you desire, if you can't afford to hire one, one will be represented to you free of charge. You understand all those rights? You're nodding your head like you do, right? Okay, you're probably curious as to why we're wanting to talk [to] you tonight, is that true? With that in mind, are you willing to talk to us about why we were at your house tonight? Okay.

Balbuena responded, "Yup. Yup."

Balbuena initially denied being at the scene of Segura's murder. The detectives then falsely told Balbuena that they knew he was at the scene with Stinson (Jujakas) because they had already talked to him. They encouraged Balbuena to speak honestly, saying "it's important for you to be honest with us so if there is some way to help yourself out this is the time to do it." They also referred to Balbuena's impending fatherhood, describing Balbuena as "the sixteen year old that's going to be a father soon."

During the interview, the detectives also presented Balbuena with alternative scenarios. They stated, "Either you are a young man that is angry because your best friend

was just killed . . . [o]r somebody like Jujakas forced you to do this . . . maybe you weren't thinking straight, maybe you were upset, maybe that guy aimed the gun at you, maybe he's a gang member, maybe he's the guy that killed Gizmo . . . . Was it a spur of the moment type thing or did you plan it for the whole night?"  After this last question, Balbuena acknowledged that he was at the scene of the murder but denied having a gun.

The detectives continued to present alternatives:  "[I]f it's a justifiable homicide or it's something you did out of rage and you just weren't thinking straight then that's important for us to get down accurately.  If you're just a killer that just wants to go around to kill people . . . then by all means tell us and we'll document that as such."  "Maybe you were shooting in defense and just, right maybe trying to scare him."  The detectives also continued making general appeals to Balbuena's honesty.  Balbuena continued to deny that he had a gun but admitted he was "right there in front of the car."

One of the detectives then stated, "[R]emember, we are giving you the opportunity to try to work through this so maybe you can be there for your kid in a few years."  Balbuena again admitted being in front of the car and again denied having a gun.  The detectives told Balbuena that witnesses saw him shooting a gun and asked what type of gun he had, as "only one of them hit somebody . . . .[s]o it's important which one you had."  Balbuena then admitted having a .32-caliber handgun, shooting three or four rounds at the car's front window, and seeing two people in the car.

As the interview progressed, the detectives referred to the possible sentences Balbuena faced, stated that he would be tried as an adult, and implied that he would receive lenient treatment if he spoke honestly and showed "remorse."  After

these statements, Balbuena provided details about the incident. Balbuena told the detectives that Herrera gave him the gun and told him to shoot, Balbuena and the others—including Stinson, Herrera, and another person—approached Segura's car from behind, Balbuena belonged to the RST gang, and Segura's murder was gang retaliation for the murder of another RST member, "Gizmo."

## C.

Before trial, Balbuena moved to suppress his statements as involuntary, and the trial court denied the motion. In April 2008, a jury found Balbuena guilty of first-degree murder, attempted murder, and street terrorism. The trial court sentenced Balbuena to eighty-two-years'-to-life imprisonment. On direct appeal, Balbuena argued, among other things, that his confession was coerced in violation of his constitutional rights. The California Court of Appeal concluded that the detectives improperly offered Balbuena leniency during the latter part of the interview, but Balbuena made critical admissions—that he was in front of the car, that he had a .32-caliber gun, and that he fired three or four rounds at the front window of the car—before the detectives employed improper tactics. After considering the totality of the circumstances, including the video recording of the interview, the circumstances of the interview, Balbuena's age, experience, and demeanor, and Balbuena's waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), the court concluded that Balbuena's statements were voluntary.

The state appellate court further found any error in admitting Balbuena's statements harmless because the evidence against him was "very strong." This evidence included Lawson's statements that she saw Balbuena near the murder scene with a gun shortly before she heard shots,

and that Balbuena told her later that same day that he shot Segura in the forehead. The court reduced Balbuena's sentence to seventy-two-years'-to-life imprisonment but otherwise affirmed. The California Supreme Court denied review.

In January 2011, Balbuena filed a timely petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. Balbuena challenged his conviction and argued, among other things, that the state court's admission of his confession violated the Fourteenth Amendment's Due Process Clause because his statements were involuntary. In May 2012, the district court denied Balbuena's habeas petition on the merits of his claims, entered judgment in favor of respondents, and denied a certificate of appealability.[5] Balbuena appealed, and, in May 2013, this court appointed counsel and issued a certificate of appealability on the sole issue of whether the state court violated Balbuena's right to due process by denying his motion to suppress his confession on the ground that it was an involuntary product of coercion.

In August 2013, Balbuena asked this court to stay his appeal and remand to the district court with instructions to "permit [him] to file an amended petition." Balbuena acknowledged that if this court denied his motion he would "be left to file a new successive habeas petition," which is generally barred by 28 U.S.C. § 2244(b)(3). In October 2013, this court denied the motion without prejudice to refiling with a written indication that the district court would

---

[5] "A disposition is 'on the merits' if the district court either considers and rejects the claims or determines that the underlying claim will not be considered by a federal court." *McNabb v. Yates*, 576 F.3d 1028, 1029 (9th Cir. 2009) (citation omitted).

be willing to entertain the motion.  Balbuena obtained written indication from the district court stating that it "was willing to entertain" further proceedings but also that it was making "no comment on the merits of such a motion."  He then filed a renewed motion to stay the appeal and remand to the district court to file an amended petition.  In December 2013, this court stayed the appeal and remanded under Federal Rule of Appellate Procedure 12.1(b) to permit the district court to consider Balbuena's Rule 60(b) motion.

Balbuena returned to the district court and filed a Rule 60(b) motion for relief from judgment to allow him to amend his habeas petition to add a new claim that the admission of his confession violated his *Miranda* rights.  In November 2014, the district court denied the motion without prejudice and stayed proceedings to allow Balbuena to exhaust his new claim in state court.  In January 2017, the district court reopened proceedings, and Balbuena filed a renewed Rule 60(b) motion in March 2017.  In February 2018, the district court denied the motion as an unauthorized second or successive petition under 28  U.S.C. § 2244(b)(3)(A).  Balbuena appealed that decision, and this court consolidated the appeals.

## II.

This court reviews de novo a district court's denial of a habeas corpus petition, *Smith v. Ryan*, 813 F.3d 1175, 1178–79 (9th Cir. 2016), and a dismissal of a Rule 60(b) motion as an unauthorized second or successive § 2254 petition, *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013).  Both claims are governed by standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* 28 U.S.C. §§ 2244(b), 2254(d).

## III.

### A.

Under § 2254, a state prisoner may challenge the constitutionality of his custody by filing a petition for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(a). In his habeas petition, Balbuena challenged his state custody arguing, among other things, that the admission of his confession violated his due process rights because his statements were the involuntary product of coercion and, therefore, the state trial and appellate courts unreasonably found his confession voluntary.

We consider Balbuena's petition under the framework of AEDPA and apply a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). Under AEDPA, a federal court may only grant habeas corpus relief when the state court's ruling was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Under the first clause of § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law if it contradicts governing law in Supreme Court cases, or if it reaches a different result than Supreme Court precedent when considering materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the second clause, a state court's decision is an "unreasonable application" of clearly established federal law if it identifies the correct "governing legal rule but applies it unreasonably

to the facts" of the case. *Id.* at 407–08. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 409–10, 412).

Under § 2254(d)(2), a state court's factual determinations are not "unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). That "[r]easonable minds reviewing the record might disagree" about a factual finding is insufficient to "supersede" the state court's determination. *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).

When applying these standards to a petitioner's claims, this court considers the last reasoned state court decision—here, the decision of the California Court of Appeal. *See Martinez v. Cate*, 903 F.3d 982, 991 (9th Cir. 2018). Balbuena's claim that the state court violated his due process rights by admitting his coerced confession challenges the constitutionality of his custody. Accordingly, we consider whether the state court's adjudication of this claim resulted in a decision that was "contrary to" or involved an "unreasonable application of" established federal law, or that was based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

**B.**

An involuntary or coerced confession violates a defendant's right to due process under the Fourteenth Amendment and is inadmissible at trial. *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964); *see Dickerson v. United States*, 530 U.S. 428, 433–34 (2000). To determine whether

a confession is involuntary, we must ask "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession," considering "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson*, 530 U.S. at 434 (internal quotation marks and citations omitted). "The characteristics of the accused can include the suspect's age, education, and intelligence as well as a suspect's prior experience with law enforcement," *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) (citations omitted), and the suspect's maturity, *Withrow v. Williams*, 507 U.S. 680, 693 (1993). The "potential circumstances" of the interrogation include its length and location, and "the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." *Id*. at 693–94 (citation omitted).

Generally telling a suspect to speak truthfully does not amount to police coercion. *See Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997), *overruled on other grounds by United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014) (en banc). Police deception alone also "does not render [a] confession involuntary," *United States v. Miller*, 984 F.3d 1028, 1031 (9th Cir. 1993) (citing *Frazier v. Cupp*, 394 U.S. 731, 737–39 (1969)), nor is it coercive to recite "potential penalties or sentences," including the potential penalties for lying to the interviewer, *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003) (citations omitted).

"The [voluntariness] determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Dickerson*, 530 U.S. at 434 (second alteration in original) (quoting *Stein*

*v. New York*, 346 U.S. 156, 185 (1953)). Thus, the court reviews a confession from a teenager with "special caution." *Doody v. Ryan*, 649 F.3d 986, 1011 (9th Cir. 2011) (en banc). Even in the case of a juvenile, however, indicating that a cooperative attitude would benefit the accused does not render a confession involuntary unless such remarks rise to the level of being "threatening or coercive." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (quoting *Fare v. Michael C.*, 442 U.S. 707, 727 (1979)).

## C.

Balbuena argues that his statements were involuntary based on three factors: (1) his youth, inexperience, and immaturity; (2) the *Miranda* warnings, which he characterizes as incomplete; and (3) the interrogation tactics. We consider whether Balbuena's will was overborne under the totality of the circumstances. *Dickerson*, 530 U.S. at 434. We address each of these arguments in turn, with the transcript and the video recording of the interview to assist our review. *See Doody*, 649 F.3d at 1009 (stating that "[t]he audiotapes of [the petitioner's] interrogation are dispositive in this case, as we are not consigned to an evaluation of a cold record, or limited to reliance on the detectives' testimony.").

## 1.

First, Balbuena's status as "a juvenile is of critical importance in determining the voluntariness of his confession." *Id.* at 1008; *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (observing that the voluntariness of a statement depends on "the characteristics of the accused," including his "youth" (citation omitted)). Balbuena asserts that he was fifteen years old at the time of the interview and suggests that the state court's

determination that he was sixteen years old was an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2), (e). The evidence in the record, however, including Balbuena's telling the detectives he was sixteen years old, supports the conclusion that Balbuena was sixteen years old. Thus, the state court's conclusion was not unreasonable.

Conceding that "whether he was 15 or 16 at the time of the shooting is of little legal significance," Balbuena argues that the state court failed to "evaluate the impact of the officers' statements on an isolated youngster with no relevant experience." Balbuena argues that this failure was objectively unreasonable. But Balbuena's argument is based on the false premise that the state court "mentioned his age only once in passing." Instead, the state court addressed Balbuena's age when considering the totality of circumstances to determine whether his will was overborne. That section of the state appellate court opinion reads, in part, as follows:

> Having reviewed the videotape of [Balbuena's] confession, we find ourselves in agreement with the trial court's commendably thorough and detailed ruling regarding the nature of the interview. While [Balbuena] was a minor without criminal history, he was hardly a "child" as characterized in his briefs: He was 16 years old, arrested in bed with his pregnant girlfriend, and well versed in the gang activities in his neighborhood. The atmosphere of the hour and a half long interview (which included periods when he was left in the interview room by himself)

was not overly harsh or threatening, and [Balbuena's] demeanor throughout was relaxed and displayed no intimidation or fear.

*People v. Balbuena*, No. A122043, 2010 WL 1783558, \*15 (Cal. Ct. App. May 5, 2010) (citation omitted).  The state court's conclusion that Balbuena's confession was voluntary, after considering his age and lack of criminal record, was not an unreasonable application of the law.

## 2.

Second, although Balbuena did not assert a separate *Miranda* claim in the state trial or appellate court, we consider the adequacy of the warnings he received as another factor in the voluntariness determination.[6]  *See Withrow*, 507 U.S. at 693–94.  Moreover, Balbuena argues that because he has "consistently raised" the "claim of involuntariness," this court must weigh "[a]ll circumstances, including the failure to advise an in-custody suspect of his right to counsel."  Therefore, as part of the totality of the circumstances relevant to Balbuena's Fourteenth Amendment claim, we consider his arguments that the *Miranda* warnings he

---

[6] Although Balbuena did not assert a *Miranda* claim in the trial court, he challenged the admission of his confession on other grounds and the court held a voluntariness hearing.  The state submitted the videotape and transcript of Balbuena's interview, including the *Miranda* warnings.  On cross examination, one of the detectives testified that Balbuena was advised "of his rights," and defense counsel did not challenge that statement.  The trial court concluded that Balbuena was "given his *Miranda* rights at the beginning of the interview and he did expressly waive those rights."  In the appellate court, Balbuena challenged the voluntariness of his confession, but again did not assert that the *Miranda* warnings were inadequate.  The appellate court stated, without explanation, that Balbuena "was advised of his *Miranda* rights and waived them."

received were deficient; we do not consider these arguments as a separate Sixth Amendment claim.

Balbuena argues that the warnings he received were deficient because the detectives failed to advise him that he had the right to have an attorney present during questioning. *See Miranda*, 384 U.S. at 471 (holding that a suspect "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation"). He argues that the state appellate court's failure to consider the detectives' *Miranda* violation "was objectively unreasonable and contrary to precedent."

The *Miranda* decision, and the warnings it requires as "absolute prerequisite[s] to interrogation," 384 U.S. at 471, are long standing and clearly established federal law. *See Williams*, 529 U.S. at 412 (explaining that "clearly established Federal law" under § 2254(d)(1) "refers to the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision"). Moreover, Balbuena correctly notes that this court has concluded that *Miranda* warnings are inadequate when they advise a defendant of the right to counsel *before* questioning, but do not advise a defendant of the right to counsel *during* questioning. *See United States v. Bland*, 908 F.2d 471, 473–74 (9th Cir. 1990); *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984). But decisions of this court, including *Bland* and *Noti*, are not "clearly established Federal law" for purposes of review under the AEDPA. *See Williams*, 529 U.S. at 412. Instead, we must look to Supreme Court precedent as we consider whether the state appellate court's determination that Balbuena's confession was voluntary, based on the totality of the circumstances including the *Miranda* warnings, *Withrow*, 507 U.S. 693–94, was an unreasonable application of federal law.

Although the Supreme Court "has not dictated the words in which the essential information must be conveyed," *Florida v. Powell*, 559 U.S. 50, 60 (2010), the warnings must "reasonably convey to a suspect his rights as required by *Miranda*." *Id.* (modification, citation, and quotation marks omitted); *see also Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) (explaining that the Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision."). In *Powell*, the Supreme Court considered an argument similar to Balbuena's argument—that a defendant's *Miranda* warnings were constitutionally infirm because the detectives advised him that he had a right to an attorney before questioning, but they did not advise him that he had the right to have an attorney present during questioning. *See* 559 U.S. at 60–62. In *Powell*, the defendant was advised that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of these rights at any time [he] want[ed] during this interview." *Id*. at 54. The defendant, however, was not advised that he had the right to have an attorney present during questioning. *See id*.

The Court considered whether these *Miranda* warnings satisfied the requirement "that an individual held for questioning 'must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.'" *Id*. at 60 (quoting *Miranda*, 384 U.S. at 471). The Court concluded that the challenged warnings "reasonably conveyed [the defendant's] right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 62. "To reach the opposite conclusion, *i.e*., that the attorney would not be present throughout the interrogation, the suspect would have to imagine an unlikely scenario: To consult counsel, he would be obliged to exit and reenter the interrogation room between each query." *Id*.

Here, Balbuena was advised that he had the right to an attorney "prior to" questioning and was also advised that he "ha[d] the right to an attorney."[7]  Although these warnings are not identical to those described in *Powell*, there could be "fairminded disagreement," *see Harrington v. Richter*, 562 U.S. 86, 103 (2011), over whether the warnings in this case and in *Powell* were sufficiently similar to conclude that the warnings "reasonably conveyed" Balbuena's right to have an attorney present at all times, *Powell*, 559 U.S. at 62. Therefore, the state court's determination that Balbuena was advised of his *Miranda* rights was not "objectively unreasonable." *See Lockyer*, 538 U.S. at 75.  Based on the record in the state court, and applying the deferential review of the AEDPA, we conclude it was not unreasonable for the state court to conclude, under the totality of the circumstances including the *Miranda* warnings, that Balbuena's confession was voluntary.

**3.**

Third, Balbuena asserts that the detectives used coercive techniques and compares the circumstances of his interview to *Preston* where, on direct appeal, this court held that a thirty-eight minute noncustodial interview of an eighteen-year old with an IQ of sixty-five was coercive and rendered his confession involuntary.  751 F.3d at 1028.  Balbuena also compares this case to *Rodriguez v. McDonald*, where the court held that police officers' suggestion that cooperation would result in leniency supported the conclusion that the suspect's waiver of the right to counsel was involuntary.

---

[7] Balbuena was advised: "you have the right to an attorney, you have the right to an attorney prior to your questioning if you desire, if you can't afford to hire one, one will be represented [sic] to you free of charge."

872 F.3d 908, 923–24 (9th Cir. 2017). In *Rodriguez*, the defendant was fourteen years old and had Attention Deficit Hyperactivity Disorder and a "borderline" IQ. *Id*. at 923–23. The officers continued to question the defendant even after he requested a lawyer, and "impressed upon [the defendant] that he would imminently be charged with murder." *Id.* at 924.

Like the defendants in *Preston* and *Rodriguez*, Balbuena was a youth at the time of the interview, but unlike those defendants there is no evidence that Balbuena had a limited IQ or that he was "easily confused" and "highly suggestible and easy to manipulate." *See Preston*, 751 F.3d at 1022, 1028, 1030 (suggesting that the court might "reach a different conclusion regarding someone of normal intelligence"). Additionally, unlike the defendant in *Rodriguez*, Balbuena was advised of his *Miranda* rights and never asked to speak to an attorney.

On the other hand, as Balbuena argues, the detectives in this case used some of the same interview techniques employed in *Preston* and *Rodriguez*—such as suggesting alternative scenarios and making implied offers of leniency. *See Preston*, 751 F.3d at 1025–26; *Rodriguez*, 872 F.3d at 923–34. References to a suspect's unborn child, in some circumstances, could also be considered a coercive interview tactic. *See Brown v. Horell*, 644 F.3d 969, 980–82 (9th Cir. 2011) (deeming a confession involuntary in light of the defendant's limited education, relatively young age (twenty-one years), repeated references to his unborn child, and lengthy custodial interrogation).

But "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Instead, we consider the totality of the circumstances under a highly deferential

standard to determine the reasonableness of the state court's conclusion that Balbuena's statements were voluntary. *See Yarborough*, 541 U.S. at 664. The "totality of the circumstances" test is a general standard requiring "even greater deference under AEDPA." *Cook v. Kernan*, 948 F.3d 952, 968 (9th Cir. 2020).

To be sure, Balbuena's youth and lack of experience with law enforcement, the time of the interview, the location of the interview, and the detectives' tactics are all factors that could potentially support a conclusion that Balbuena's confession was involuntary. *See, e.g.*, *Haley v. Ohio*, 332 U.S. 596, 599–600 (1948) (finding confession involuntary when a fifteen-year-old was questioned for five hours, between midnight until dawn, by "relays of" one or two officers at a time); *Doody*, 649 F.3d at 1009, 1012–13 (finding confession involuntary when a seventeen-year-old was questioned for nearly thirteen hours by "tag teams" of two, three, and four detectives, while isolated, sleep deprived, and held in a room with only a straight-backed chair and no table to lean on, and relentlessly questioned even after he stopped responding, and told that he had to answer questions). But the circumstances of Balbuena's interview are a far cry from *Haley* and *Doody*.

Contrary to Balbuena's arguments that the detectives overbore his will, the video recording reveals that the tone of the interview was non-threatening. Balbuena spoke easily with the detectives, displayed a calm demeanor with no indication of fear or intimidation, and did not react when the detectives referred to his unborn child. He even spontaneously offered to show the detectives his tattoo. The interview lasted ninety minutes, including breaks and an approximately thirty-minute period when Balbuena was left alone in the room. The same two detectives conducted the

interview and Balbuena was not subjected to "tag team" questioning, nor was he surrounded by multiple officers. Balbuena sat in a chair next to a table in a relaxed posture with his hands behind his head or with one arm slung over the back of chair for a large portion of the interview. About an hour into the interview, Balbuena yawned and leaned on the table when the detectives left the room, but he returned to a more upright posture and alternated between leaning on the table and sitting upright for the remainder of the interview.

In sum, the video recording of Balbuena's interview, like the audio recording in *Doody*, is dispositive and supports the state court's conclusion that Balbuena voluntarily confessed.

## D.

We conclude that the state court's voluntariness determination was not contrary to or an unreasonable application of federal law. The state court considered the totality of the circumstances, including the adequacy of the *Miranda* warnings. The state court did not unreasonably conclude that Balbuena was sixteen years old and considered his age, experience, and maturity as part of the totality of the circumstances of his confession. Finally, the state court did not unreasonably conclude that the circumstances of the interview, which included the detectives' limited references to Balbuena's unborn child, use of "alternative scenarios," and implied offers of leniency, were not coercive. The video recording of the interview refutes Balbuena's argument that those tactics overbore his will and rendered his confession involuntary. Therefore, applying AEDPA's highly deferential standard for habeas corpus review, we conclude that the state court's determination that Balbuena's confession was voluntary was not unreasonable.

## IV.

We next address whether the district court erred by denying Balbuena's Rule 60(b) motion as an unauthorized second or successive petition under 28 U.S.C. § 2244(b)(3)(A). Balbuena argues that the district court should have considered his Rule 60(b) motion as a motion to amend his habeas petition because he filed it while his appeal from the denial of his habeas petition remained pending before this court. Therefore, Balbuena contends, his claim was not "fully adjudicated." Because Balbuena asserted a new claim in his Rule 60(b) motion despite the district court's previously adjudicating his habeas petition on the merits, we conclude that the district court properly denied that motion as an unauthorized second or successive petition.

## A.

AEDPA generally bars second or successive habeas petitions. Section 2244(b)(1) states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). No exceptions exist to this statutory bar. *See Goodrum v. Busby*, 824 F.3d 1188, 1193 (9th Cir. 2016) (explaining that claims asserted in an earlier petition "must be dismissed, period").

"If a second or successive petition presents new claims that were not previously raised, those claims must be dismissed as well . . . ." *Id.* (citing 28 U.S.C. § 2244(b)(2)). Congress, however, provided two narrow exceptions to this statutory bar. The first applies if the "new claim relies on a new rule of constitutional law, made retroactive on collateral review." 28 U.S.C. § 2244(b)(2)(A). The other applies if the new claim turns on newly discovered evidence that

shows a high probability of actual innocence. *Id.* § 2244(b)(2)(B).

Before filing a second or successive petition, a petitioner must file a motion in the appropriate court of appeals and obtain an order authorizing the district court to consider the petition. *See id.* § 2244(b)(3)(A). This requirement is jurisdictional. *See Cooper v. Calderon*, 274 F.3d 1270, 1274–75 (9th Cir. 2001) (per curiam). Here, the district court concluded that Balbuena attempted to assert a new claim through his Rule 60(b) motion and, therefore, it was "in truth a request to file an unauthorized second or successive habeas petition" because Balbuena had not obtained an order from this court authorizing the district court to consider it.

Balbuena argues that the district court mischaracterized his Rule 60(b) motion as a second or successive petition subject to § 2244, when it should have construed it as a motion to amend his habeas petition under Rules 15 and 60(b). Balbuena's argument turns on his characterization of his habeas petition as "pending" because "all proceedings, including appellate proceedings, have not been completed."

Generally, "a petition will not be deemed second or successive unless, at a minimum, an earlier-filed petition has been finally adjudicated." *Goodrum*, 824 F.3d at 1194 (citing *Woods v. Carey*, 525 F.3d 886, 889 (9th Cir. 2008)). "Thus, when a petitioner files a new petition while his first petition remains pending, courts have uniformly held that the new petition cannot be deemed second or successive." *Id.* (citations omitted).

Moreover, a movant does not make a habeas corpus claim, and therefore does not file a successive petition, "when he merely asserts that a previous ruling which

precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *See Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005); *see also Slack v. McDaniel*, 529 U.S. 473, 485–86 (2000) (concluding that a habeas petition filed "after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition"); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998) (explaining that a habeas petition filed after an earlier petition was dismissed as premature was not a second or successive petition but part of the adjudication of the first petition).

Balbuena does not dispute that the district court denied his habeas petition on the merits. Instead, he argues that a habeas petition is not "finally adjudicated," even after a district court has denied it on the merits, if that denial is pending on appeal. Therefore, we first consider whether Balbuena's habeas petition was "pending" for purposes of § 2244 because its denial was on appeal in this court when he filed his Rule 60(b) motion in the district court.

**B.**

To support his argument, Balbuena relies on two cases from this circuit, *Woods* and *Goodrum*, and attempts to distinguish another, *Beaty v. Schriro*, 554 F.3d 780 (9th Cir. 2009) (published order). But we have not adopted the meaning of "finally adjudicated" that Balbuena advocates. Therefore, Balbuena's reliance on *Woods* and *Goodrum* is misplaced, and his attempt to distinguish *Beaty* fails.

Furthermore, these cases do not address Rule 60(b) motions. As we explain later, this is a significant procedural distinction that we must consider in light of the Supreme

Court's holding in *Gonzalez* that a Rule 60(b) motion that asserts a claim on the merits is in effect a habeas petition and is subject to requirements of § 2244(b) for successive petitions. *See* 545 U.S. at 531–32.

## 1.

Contrary to Balbuena's characterization of *Woods* and *Goodrum*, we have not held that a habeas petition is pending, and thus not "fully adjudicated," simply because the denial of that petition is before this court on appeal. In *Woods*, we considered whether § 2244(b) barred a pro se petitioner's second habeas petition, which he filed while his first petition was still pending in the district court. 525 F.3d at 887. We held that the district court should have construed the second petition as a motion to amend the petition that was still pending in the district court. *Id.* at 890. But we did not consider how to treat a second petition that is filed while a prior petition is pending on appeal. Therefore, *Woods* establishes only that a petition that is still pending in the district court is not final for purposes of § 2244. It offers no support for Balbuena's position.

Our decision in *Goodrum* similarly fails to support Balbuena's argument. There, we explained—interpreting *Woods*—that if a petitioner files a second petition in the district court while his first petition is still pending in that court, the district court must rule on the second petition as a motion to amend under Rule 15. 824 F.3d at 1195. If a petitioner files an application for leave to file a second or successive petition in this court and "informs us that an earlier-filed petition remains pending" in the district court, we must construe that application as a motion to amend, but "we lack[] authority to rule on such a motion in the first instance." *Id.* Instead, "[w]e can issue an order advising the *pro se* petitioner that his application is being denied as

unnecessary on the ground that the new petition he seeks to file is not second or successive and that he is therefore free to file it in the district court," or if the new petition is attached to the application, as our rules require, "we can transfer the petition to the district court." *Id.* But our decision in *Goodrum* does not resolve the question here: whether a petition should be considered "finally adjudicated" when its denial is pending on appeal.

If our decisions in *Woods* and *Goodrum* do not support Balbuena's position, then our decision in *Beaty* defeats it. There, after the district court denied the petitioner's habeas petition in the first instance and on remand after a first appeal, he filed a motion to amend his petition and argued that it should be considered part of his original habeas proceeding. *Beaty*, 554 F.3d at 782. The district court denied the motion to amend, the petitioner appealed again, and while that appeal was pending, he applied to file a second or successive petition, arguing his additional claims should be considered as part of his original habeas proceeding. *Id.* We rejected the petitioner's arguments and "decide[d] that [he] cannot use *Woods* to amend his petition after the district court has ruled and proceedings have begun in this court . . . ." *Id*. at 783 n.1. Because the petitioner did not move to amend until "after the district court had denied his claims," he was required to satisfy the requirements for successive petitions under § 2244(b). *Id.* at 782–83.

Here, like the petitioner in *Beaty*, Balbuena sought to add a new claim after the district court denied his petition and he appealed that denial. Applying *Beaty*, the district court properly considered Balbuena's Rule 60(b) motion a second or successive application for habeas corpus relief. Because Balbuena neither sought, nor obtained, authorization from this court to file a second or successive habeas petition, the

district court lacked jurisdiction to consider Balbuena's new claim.   *See* 28 U.S.C. § 2244(b)(3); *Cooper*, 274 F.3d at 1274–75.

## 2.

Despite *Beaty*'s clear command, Balbuena urges this court to follow the Second Circuit's decisions in *Ching v. United States*, 298 F.3d 174 (2d Cir. 2002), and *Whab v. United States*, 408 F.3d 116 (2d Cir. 2005), as well as the Third Circuit's decision in *United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019).   In contrast to our holding in *Beaty*, each of these cases concluded that a habeas petition is not "fully adjudicated" while its denial is pending on appeal and, therefore, a second petition filed while that appeal is pending is not a second or successive petition under § 2244.   *Santarelli*, 929 F.3d at 104–05; *Whab*, 408 F.3d at 118; *Ching,* 298 F.3d at 175.   To the extent these cases conflict with *Beaty*, we decline to follow them.   *See United States v. Hayes*, 231 F.3d 1132, 1139–40 (9th Cir. 2000).

Moreover, these cases are distinguishable because they do not address Rule 60(b) motions or apply *Gonzalez*.[8]   In *Santarelli* and *Ching*, after the appellate courts reversed and remanded the denial of the petitioners' initial habeas petitions, the initial and second petitions were before the district courts simultaneously.   *Santarelli*, 929 F.3d at 107; *Ching*, 298 F.3d at 176.   Therefore, the district courts could apply Rule 15 and consider the petitioners' second petitions

---

[8] The Second Circuit issued its decisions in *Ching* and *Whab* before the Supreme Court's decision in *Gonzalez*.   In *Santarelli*, the Third Circuit distinguished *Gonzalez* because the petitioner's motion to file a second or successive petition was not a Rule 60(b) motion.   929 F.3d at 105.

as motions to amend the initial petitions.**⁹**   *Santarelli*, 929 F.3d at 105; *Ching*, 298 F.3d at 179–80.

In *Whab*, the court of appeals denied a certificate of appealability for the petitioner's initial habeas petition and transferred his motion seeking leave to file a second petition to the district court, concluding that the subsequent petition was not second or successive.**¹⁰**   408 F.3d at 118, 120. However, the court distinguished *Ching* because, after it denied the certificate of appealability, "the district court never had [Whab's] two petitions before it simultaneously." *Id*. at 119.   The court explained that it could "see no reason in these circumstances to instruct the district court to treat the new petition as a motion to amend the initial petition." *Id*.   Thus, the court apparently concluded that Rule 15 would not apply on remand, but it did not address Rule 60 or any other potentially applicable rules or procedures.

Here, we entered a limited remand under Federal Rule of Appellate Procedure 12.1(b) for the district court to consider

---

**⁹** The courts explained that when the denial of a habeas petition is pending on appeal, the district court lacks jurisdiction to consider a subsequent petition as a motion to amend. *Santarelli*, 929 F.3d at 106 (citing *Griggs v Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *Ching*, 298 F.3d at 180, n.5 (same).   The Third Circuit concluded that, given these "jurisdictional dynamics," a motion to file a subsequent habeas petition, filed when the denial of an initial petition is pending on appeal, should be construed as a motion to amend and stayed in the district court pending the resolution of the appeal. *Santarelli*, 929 F.3d at 105-06.   Both courts, however, concluded that if the district court's denial of an initial petition is affirmed, the petitioner must satisfy the requirements applicable to second or successive petitions.   *Id.* at 106; *Ching*, 298 F.3d at 180 n.5.

**¹⁰** *Whab* involved a petition under 28 U.S.C. § 2255, but § 2244(a)(3)(A) also applies to second or successive § 2255 petitions.

Balbuena's Rule 60(b) motion, but we retained jurisdiction over the denial of his habeas petition.  Unlike *Ching* and *Santarelli*, the district court could not apply Rule 15; instead, it could only consider Balbuena's new claim if it set aside its earlier judgment under Rule 60(b).  *See Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996) ("[O]nce judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60.").  But, as we explain next, *Gonzalez* establishes that Balbuena's Rule 60(b) motion was a disguised habeas petition, and the district court properly denied it as an unauthorized second or successive petition.

## C.

Under Rule 60(b), a party may seek relief from a final judgment under limited circumstances, including fraud, mistake, newly discovered evidence, or any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  In *Gonzalez*, the Supreme Court explained that "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254, only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules."  545 U.S. at 529 (alteration in original) (footnote omitted) (quoting 28 U.S.C. § 2254).  Therefore, the Court considered "whether, in a habeas case, [Rule 60(b)] motions are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under the provisions of [AEDPA], codified at 28 U.S.C. § 2244(b)."  *Id.* at 526.

To answer this question, the Court first considered "whether a Rule 60(b) motion filed by a habeas petitioner is a 'habeas corpus application' as the statute uses that term," *id.* at 530 (quoting 28 U.S.C. § 2244(b)), and determined that

"an 'application' for habeas relief is a filing that contains one or more 'claims,'" *id.* The Court then defined a "claim" as "an asserted federal basis for relief from a state court's judgment of conviction." *Id*. Thus, a Rule 60(b) motion asserts a claim if it "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim *on the merits*." *Id*. at 532.

Furthermore, a Rule 60(b) motion that asserts a previously omitted claim based on excusable neglect, or argues newly discovered evidence supports a previously denied claim, or argues a change in substantive law justifies relief from the previous denial of a claim, "is in substance a successive habeas petition and should be treated accordingly." *Id.* at 531; *see also Jones*, 733 F.3d at 834 ("[A] motion that . . . 'in effect asks for a second chance to have the merits determined favorably' raises a claim that takes it outside the bounds of Rule 60(b) and within the scope of AEDPA's limitations on second or successive habeas corpus petitions." (quoting *Gonzalez*, 545 U.S. at 532 n.5)).

The Court explained that "[a] habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute." *Gonzalez*, 545 U.S. at 531 (quoting 28 U.S.C. § 2254 Rule 11). Therefore, "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id*. Using Rule 60(b) to present such claims would also "impermissibly circumvent the

requirement that a successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar." *Id.* at 532. Therefore, a Rule 60(b) motion that asserts a new claim is in effect a habeas corpus petition that is subject to the requirements of § 2244(b). *See id.* at 531–32.

But if no claim is presented, then a Rule 60(b) motion should not be treated like a habeas corpus petition. *Id.* at 533. A Rule 60(b) motion is not a subsequent habeas petition when it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the habeas proceedings." *Id.* at 532; *see also Jones*, 733 F.3d at 836 ("*Gonzalez* firmly stands for the principle that new claims cannot be asserted under the format of a Rule 60(b) motion, and instead Rule 60(b) is properly applied when there is some problem going to the integrity of the court process on the claims that were previously asserted.").

Balbuena distinguishes *Gonzalez* by characterizing it as holding that "an applicant's Rule 60(b) motion may be, *not* must be, a successive habeas application." This argument is technically correct; *Gonzalez* explained that not all Rule 60(b) motions are disguised habeas petitions. *See* 545 U.S. at 533 ("When no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application."). But this argument does not explain why Balbuena's Rule 60(b) motion is not a disguised habeas petition. Balbuena acknowledges that the *Miranda* claim he asserts in his Rule 60(b) motion is a new claim.[11]

---

[11] Balbuena argued to the district court that he should receive relief under Rule 60(b) because his state court counsel failed to raise his *Miranda* claim. But "an attack based on the movant's own conduct, or

Therefore, Balbuena's Rule 60(b) motion "seeks to add a new ground for relief," and we must conclude that it is a disguised habeas petition. *See id.* at 532.

## D.

But does our conclusion that Balbuena's Rule 60(b) motion is a disguised habeas petition mean that it is a second or successive petition and subject to the requirements of § 2244(b)?  Balbuena states that *Gonzalez* "did not address when a second-in-time application constitutes a 'successive' petition under the statute nor when a petition is 'finally' adjudicated."  Thus, he appears to argue that even if his Rule 60(b) motion is a disguised habeas petition, it is not a second or successive petition under § 2244(b) because the denial of his initial petition was pending on appeal.  But, as we set forth next, neither the Supreme Court's reasoning in *Gonzalez,* nor its further explanation of Rule 60(b) motions in *Banister v. Davis*, ___ U.S. ___, 140 S. Ct. 1698 (2020), support this argument.  And we have not identified any court that has adopted it.

## 1.

First, the petitioner in *Gonzalez* filed his Rule 60(b) motion after the conclusion of his appeal from his initial habeas petition, 545 U.S. at 527, but the Court's analysis did not turn on, or even address, the *timing* of the Rule 60(b) motion, *id.* at 530–32.  Instead, the Court focused on the *nature* of the motion, concluding that a Rule 60(b) motion

his habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings."  *Gonzalez*, 545 U.S. at 532 n.5.  Therefore, the district court correctly concluded that Balbuena was not alleging a defect in the federal habeas proceedings but was instead asking to amend his petition to add a new claim.

that asserts a claim on the merits is a disguised habeas petition and "in substance a successive habeas petition [that] should be treated accordingly." *Id*. at 531. However, a Rule 60(b) motion that does not assert a claim, but instead attacks the integrity of the proceedings, is a proper Rule 60(b) motion not subject to § 2244(b). *Id*. at 532–33. In contrast to Balbuena's contention, *Gonzalez* does not suggest that a Rule 60(b) motion advancing a new claim is not a successive petition if it is filed during the appeal of the initial petition.

## 2.

Second, the Supreme Court's recent decision in *Banister* further supports the conclusion that Rule 60(b) motions asserting new claims, regardless of when they are filed, are successive habeas petitions subject to the requirements of § 2244(b). *See* 140 S. Ct. at 1709–10. In *Banister*, the Court held that Rule 59(e) motions to alter or amend a judgment are not successive habeas petitions. *Id*. at 1702. In reaching that conclusion, the Court distinguished *Gonzalez* and its holding that a Rule 60(b) motion asserting a claim is a habeas petition. *Id*. at 1709 (explaining that a Rule 60(b) motion "counts as a second or successive habeas application . . . so long as the motion 'attacks the federal court's previous resolution of a claim on the merits'" (citations omitted)).

The Court began with the history of Rule 59(e) and Rule 60(b) motions, explaining that "Rule 59(e) derives from a common-law court's plenary power to revise its judgment during a single term of court, before anyone could appeal." *Id*. But Rule 60(b), in contrast,

> codifies various writs used to seek relief from
> a judgment at any time after the term's
> expiration—even after an appeal had (long

since) concluded.  Those mechanisms did not (as the term rule did) aid the trial court to get its decision right in the first instance; rather *they served to collaterally attack its already completed judgment*.

*Id.* (emphasis added).  The Court further explained that while pre-AEDPA cases seldom denied Rule 59(e) motions for raising repetitive claims, they regularly denied Rule 60(b) motions on that basis.  *Id.*  This difference was because pre-AEDPA "courts recognized Rule 60(b)—as contrasted to Rule 59(e)—as threatening an already final judgment with successive litigation."  *Id.*

In addition, the Court explained that "Rule 60(b) motions can arise long after the denial of a prisoner's initial petition—depending on the reason given for relief, within either a year or a more open-ended 'reasonable time.'"  *Id.* at 1710 (quoting Fed. R. Civ. P. 60(c)(1)).  The Court noted that in *Gonzalez* the petitioner filed his Rule 60(b) motion more than a year after his appeal from his initial petition ended.  *Id.* (citing *Gonzalez*, 545 U.S. at 527).  But, as the Court explained, "[g]iven that extended timespan, Rule 60(b) inevitably elicits motions that go beyond Rule 59(e)'s mission of pointing out the alleged errors in the habeas court's decision."  *Id.*  And the Court pointed out that "the appeal of a Rule 60(b) denial is independent of the appeal of the original petition," and "does not bring up the underlying judgment for review."  *Id.* (citation omitted).

Finally, the Court summarized why a motion to set aside a judgment under Rule 60(b) motion, if it asserts claims, is a successive petition, while a motion to set aside a judgment under Rule 59(e) is not:

> In short, a Rule 60(b) motion differs from a Rule 59(e) motion in its remove from the initial habeas proceeding. A Rule 60(b) motion—often distant in time and scope and always giving rise to a separate appeal—attacks an already completed judgment. Its availability threatens serial habeas litigation; indeed, without rules suppressing abuse, a prisoner could bring such a motion endlessly.

*Id*. None of these reasons for distinguishing Rule 59(e) motions from Rule 60(b) motions—and concluding that Rule 60(b) motions that assert claims are disguised habeas petitions, while Rule 59(e) motions are not—is in any way affected by or related to the timing of when a Rule 60(b) motion is filed.

The Court's analysis of Rule 60(b) motions as removed from the initial habeas proceeding, collaterally attacking the judgment, and threatening serial habeas litigation, applies with equal force to Rule 60(b) motions filed during the appeal of an initial habeas proceeding and to such motions filed after the appeal is completed. Therefore, the Court's explication of Rule 60(b) motions in *Banister* undermines Balbuena's arguments to distinguish *Gonzalez*.

**3.**

Third, Balbuena does not cite, and we have not identified, any case that distinguishes *Gonzalez* on the basis Balbuena suggests: A Rule 60(b) motion, although a disguised habeas petition, is not a second or successive petition if it was filed during the appeal of an earlier petition. To the contrary, the Seventh Circuit has rejected this argument. *See Phillips v. United States*, 668 F.3d 433, 435 (7th Cir. 2012). In *Phillips*, while the petitioner's appeal

from the denial of his § 2255 motion was pending, he filed a Rule 60(b) motion for relief from the judgment. *Id.* at 434. Applying *Gonzalez*, the court concluded that the Rule 60(b) motion sought relief on the merits and was an application for collateral review. *Id*. at 435. The court also concluded that the Rule 60(b) motion was a second application for habeas relief, stating that to hold otherwise "would drain most force from the time-and-number limits in § 2244 and § 2255." *Id*.[12]

Similarly, in *Santarelli* the Third Circuit distinguished *Gonzalez* because the petitioner's motion to file a second or successive petition was not a Rule 60(b) motion and because of "the inherent nature of Rule 60(b) motions." 929 F.3d at 105. The Third Circuit stated that its precedent was consistent with the Seventh Circuit's holding in *Phillips* that a Rule 60(b) motion, addressed to the merits, is a second or successive petition, even if filed while an appeal from an initial petition is pending. *Id*. The court explained that under its precedent a Rule 60(b) motion is a second or successive petition: "[A] Rule 60(b) motion that raises a claim attacking the underlying criminal judgment *must* be a second or successive petition because, the judgment having become final, the petitioner has expended the one full opportunity to seek collateral review that AEDPA ensures." *Id*. (alteration in original) (quoting *Blystone v. Horn*, 664 F.3d 397, 413 (3d Cir. 2011)). Therefore, although Balbuena argues that we

---

[12] Because it had not been invoked, the court rejected any reliance on Seventh Circuit Rule 57, which allows a district judge to request a remand to "correct errors that affect[ed] the proceedings." *See Phillips*, 668 F.3d at 436. The court explained the steps to invoke Rule 57, which require the district court to indicate that it is inclined to grant the Rule 60(b) motion, and stated that "[o]nly this combination of steps renders the judgment non-final and allows a modification while the appeal is pending." *Id*.

should follow the reasoning of *Santarelli*, as it turns out, the Third Circuit's application of *Gonzalez* does not support his position that his Rule 60(b) motion was not a successive petition.

We conclude that the district court correctly applied *Beaty* and *Gonzalez* and denied Balbuena's Rule 60(b) motion as an unauthorized second or successive habeas petition. In addition, we have identified no authority from our sister circuits that supports Balbuena's argument that his Rule 60(b) motion, even if considered a disguised habeas petition, was not a successive petition. Accordingly, we affirm the district court's order denying the motion.

## V.

Applying the deferential standards of federal habeas review, we conclude that the state court reasonably concluded that Balbuena's confession was voluntary, and we affirm the district court's denial of the habeas petition. Because Balbuena's Rule 60(b) motion sought to add a new claim after the district court adjudicated his habeas petition on the merits, we conclude that the district court correctly denied the motion, and we affirm.

**AFFIRMED.**

---

W. FLETCHER, Circuit Judge, concurring in the result:

I agree with my colleagues that the state court did not unreasonably conclude that Balbuena's confession was voluntary. I also agree that *Beaty v. Schriro*, 554 F.3d 780, 783 n.1 (9th Cir. 2009), requires us to hold that Balbuena's Rule 60(b) motion was a second or successive habeas

petition, even though it was filed while an appeal on his initial habeas petition was awaiting adjudication in our court. I write separately to register my disagreement with *Beaty* and to urge the Supreme Court to recognize the circuit split and to adopt the rule stated in *Ching v. United States*, 298 F.3d 174, 178 (2d Cir. 2002), and *United States v. Santarelli*, 929 F.3d 95, 104–05 (3d Cir. 2019).

"AEDPA places strict limitations on the ability of a petitioner held pursuant to a state judgment to file a second or successive federal petition for writ of habeas corpus." *Gonzalez v. Sherman*, 873 F.3d 763, 767 (9th Cir. 2017); *see* 28 U.S.C. § 2244(b); *see also Goodrum v. Busby*, 824 F.3d 1188, 1193 (9th Cir. 2016) (providing background). The phrase "second or successive" is undefined by AEDPA. It is a "term of art" and "does not simply refer to all [habeas] applications filed second or successively in time." *Magwood v. Patterson*, 561 U.S. 320, 331–32 (2010) (internal quotation marks, alterations, and citation omitted). Over time, "the rule that emerged is that a petition will not be deemed second or successive unless, at a minimum, an earlier-filed petition has been finally adjudicated." *Goodrum*, 824 F.3d at 1194. The question before us is whether an initial habeas petition has been "finally adjudicated" when the petition still awaits adjudication on appeal.

In *Ching*, the Second Circuit held that a habeas petition still pending on appeal has not been finally adjudicated within the meaning of the limitation on second or successive petitions. The petitioner in *Ching* filed a motion under 28 U.S.C. § 2255, attacking his conviction in federal district court. The district court denied the motion, and Ching appealed. While his appeal was pending before the Second Circuit (which eventually vacated and remanded the district

court's denial), Ching filed a habeas petition under 28 U.S.C. § 2241 in district court. The district court treated the § 2241 petition as a motion under § 2255, concluded that it was second or successive, and denied it. The Second Circuit agreed that the § 2241 petition should have been treated as a motion under § 2255 but disagreed that it was a second or successive motion. The court held that "the district court should [have] construe[d] the second § 2255 motion as a motion to amend the pending § 2255 motion." 298 F.3d at 177. The court wrote:

> We find that adjudication of Ching's initial motion was not yet complete at the time he submitted his second § 2255 motion. The denial of [his first motion] was still pending on appeal before this Court and no final decision had been reached with respect to the merits of Ching's claim.

*Id.* at 178; *see also Grullon v. Ashcroft*, 374 F.3d 137, 140 (2d Cir. 2004) (extending *Ching*'s holding to cover successive petitions filed under § 2241); *Whab v. United States*, 408 F.3d 116, 118–19 (2d Cir. 2005) (applying *Ching*'s holding where the district court did not have the earlier- and later-filed petitions before it simultaneously).

We followed *Ching* in *Woods v. Carey*, 525 F.3d 886 (9th Cir. 2008). Woods filed a pro se habeas petition under 28 U.S.C. § 2254 in federal district court. Before that petition was denied, Woods filed another pro se habeas petition in the district court under § 2254. The district court dismissed Woods's petition as second or successive. We reversed, writing, "[W]e follow the persuasive reasoning of the Second Circuit." *Id.* at 890. We held that the district court "should have construed Woods's [second-in-time] pro

se habeas petition as a motion to amend his pending habeas petition," after which the district court would have had "the discretion to decide whether the motion to amend should be granted." *Id.* (italicization omitted).

We reversed course in *Beaty*. Beaty filed a habeas petition under § 2254 in federal district court, which denied the petition. Beaty sought a certificate of appealability from us. We denied a certificate of appealability on everything except a claim as to the voluntariness of his confession; we remanded that claim to the district court for an evidentiary hearing. On remand, the district court denied the claim. Beaty requested that the district court permit him to amend his original habeas petition "to include a plethora of other claims." *Beaty*, 554 F.3d at 782. The district court denied permission to amend, and Beaty appealed. While Beaty's second appeal was pending before us, Beaty sought to add still more claims. We held Beaty's additional claims were second or successive.

In a footnote, we wrote that while we had "quoted extensively from *Ching*" in *Woods*, the facts in *Woods* did not pose the same question as in *Ching*. *Id.* at 783 n.1. The question in *Woods* was whether a new petition was second or successive when the first petition was still pending in the district court. The question in *Ching* was whether a new petition was second or successive when a denial of the first petition had been appealed and that appeal was still pending in the court of appeal. While not disagreeing with the result we had reached in *Woods*, we disagreed with the holding of *Ching*. We wrote, "Today, we decide that Beaty cannot use *Woods* to amend his petition after the district court has ruled and proceedings have begun in this court . . . ." *Id.*

The Sixth, Seventh, and Tenth Circuits have agreed with our ruling in *Beaty*. *See Moreland v. Robinson*, 813 F.3d

315, 324 (6th Cir. 2016); *Phillips v. United States*, 668 F.3d 433, 435 (7th Cir. 2012); *Ochoa v. Sirmons*, 485 F.3d 538, 540 (10th Cir. 2007). Meanwhile the Third Circuit has agreed with *Ching*, similarly concluding that adjudication is final for the purposes of § 2244(b) only once an appeal has been finally adjudicated. *See Santarelli*, 929 F.3d at 104 (holding that "a subsequent habeas petition is not 'second or successive' under AEDPA when a petitioner files such a petition prior to her exhaustion of *appellate* remedies with respect to the denial of her initial habeas petition") (emphasis added).

We made a mistake in *Beaty*. First, as a matter of ordinary language, it is hard to conclude that an initial habeas petition has been "finally adjudicated" when, in fact, it has not been. If a district court denies a habeas petition and the petitioner appeals, there is no final adjudication until the appeal has been finally adjudicated.

Second, as a practical matter, the rule followed by the Second and Third Circuits in *Ching* and *Santarelli* will not result in a flood of late and procedurally abusive claims. Any new claim that is deemed an amendment to the original petition must satisfy the demanding relation-back requirement of Federal Rule of Civil Procedure 15(c)(2), as interpreted by the Supreme Court in *Mayle v. Felix*, 545 U.S. 644 (2005).

Third, nothing in the decisions of the Supreme Court compels our interpretation of "final adjudication" in *Beaty*. As the Second Circuit observed in *Ching*, 298 F.3d at 178, and as discussed by the Supreme Court in *Magwood*, 561 U.S. at 331–33, at least three cases decided by the Supreme Court suggest that *Ching* and *Santarelli* got it right. In the words of then-Judge Sotomayor, "These cases instruct that a prior district court judgment dismissing a habeas

petition does not conclusively establish that there has been a final adjudication of that claim." *Ching*, 298 F.3d at 178.

In *Stewart v. Martinez-Villareal*, 523 U.S. 637, 642–44 (1998), the Supreme Court treated a later-filed habeas petition as part of an earlier application where the later-filed petition was premised on a newly ripened claim under *Ford v. Wainwright*, 477 U.S. 399 (1986). The *Ford* claim had been previously dismissed as premature by the district court. In *Panetti v. Quarterman*, 551 U.S. 930, 937, 942–45 (2007), the Court addressed a related but distinct circumstance where a habeas petition raised a *Ford* claim that had not been presented in an initial petition. The Court permitted the second petition—even though the initial petition had been adjudicated by the district court and Fifth Circuit Court of Appeals, and a petition for certiorari had been denied by the Supreme Court—because the *Ford* claim would have been unripe had the petitioner sought to present it in his first petition. In *Slack v. McDaniel*, 529 U.S. 473, 488 (2000), the Court declined to find a habeas petition second or successive where the district court had dismissed the first petition for failure to exhaust state remedies and where the new petition raised claims that had not been included in the first petition.

Finally, neither *Gonzalez v. Crosby*, 545 U.S. 524 (2005), nor *Banister v. Davis,* 590 U.S. ___, 140 S. Ct. 1698 (2020), pose the barrier that today's opinion suggests. In *Gonzalez*, the Supreme Court considered whether a Rule 60(b) motion that adds a claim, such as Balbuena's, is a "'habeas corpus application' as the statute uses that term." *Id.* at 530 (quoting 28 U.S.C. § 2244(b)). The Court held that if a Rule 60(b) motion advances one or more "claims," such as a new ground for relief, it is not a true Rule 60(b) motion. Rather, it is "in substance" a habeas corpus

application within the meaning of § 2244(b). *Id.* at 531. Accordingly, *Gonzalez* requires us to hold that Balbuena's Rule 60(b) motion is, in fact, a disguised habeas application.

The question in *Banister* was whether a Rule 59(e) motion is a second or successive application within the meaning of § 2244(b). The Court held that it is not. The Court distinguished a Rule 59(e) motion from a Rule 60(b) motion. It wrote, in language quoted by my colleagues, *supra* p. 38:

> In short, a Rule 60(b) motion differs from a Rule 59(e) motion in its remove from the initial habeas proceeding. A Rule 60(b) motion—often distant in time and scope and always giving rise to a separate appeal— attacks an already completed judgment. Its availability threatens serial habeas litigation; indeed, without rules suppressing abuse, a prisoner could bring such a motion endlessly.

*Banister*, 590 U.S ___, 140 S. Ct. at 1711. Just so. For that reason, and as the Court explained in *Gonzalez*, a Rule 60(b) motion that seeks to add a claim to a previously filed habeas application is not, in fact, a Rule 60(b) motion. It is, instead, a disguised habeas application subject to the bar on "second or successive" applications. Thus, *Banister* distinguishes between Rule 59(e) and Rule 60(b) motions based on the analysis in *Gonzalez*. *Banister* otherwise has little relevance for Balbuena's case.

*Ching*, *Whab*, and *Santarelli* are consistent with *Gonzalez* and *Banister*. *Gonzalez* answers the question whether a Rule 60(b) motion seeking to add a claim to a habeas application is a true Rule 60(b) motion or is a disguised habeas application. Under *Gonzalez*, such a

motion clearly is a habeas application. But *Gonzalez* does not answer the question whether it is a "second or successive" habeas application under § 2244(b). *See Phillips*, 668 F.3d at 435 ("Under *Gonzalez,* the motion was an 'application' for collateral relief. But was it a *second* application?"). That question is answered by *Ching*, *Whab*, and *Santarelli*. In my view, it is their answer to that question—not ours in *Beaty*—that is correct.

I write separately to encourage the Supreme Court to resolve the conflict in the circuits. I am optimistic, if the Court takes this or a similar case, that it will agree with the Second and Third Circuits rather than ours.